Ward *v.* Kitchen.

---

MARCUS L. WARD, executor,

*v.*

MARIA L. KITCHEN and others.

1. A *bona fide* division of the residue of an estate, consisting of both realty and personalty, as authorized by a will, is binding on the parties and all others interested.

---

NOTE.—In *Perry on Trusts* § 465, it is said that the distinction between an original investment improperly made by trustees and an investment made by the testator himself and simply continued by the trustees,

Ward v. Kitchen.

2. A direction to invest a share "in productive funds upon good securities," means only those that are designated by law; and a disregard of such requirement renders the executor personally liable, in case of loss or depreciation.

3. A specific legacy may remain invested in the stocks set apart and designated by the testator for the purpose in his will.

4. An executor, apprehending a depreciation in the stocks in which a specific legacy is invested, should protect the estate by converting them.

Bill for construction of will and for directions.

*Mr. John W. Taylor*, for complainant.

THE CHANCELLOR.

The complainant asks the direction of this court in the discharge of his duty as trustee under the will of Moses Ward, deceased, and asks, also, for a construction of part of that instrument, and of part of the codicil thereto. By the will the testator, after sundry gifts and provisions, gave one-half of all the residue of his estate, real and personal, to his son, the complainant, and of the remaining half he gave to his daughter Maria the "sum or value of $6,000 to be at her own disposal," and provided as follows as to the residue of that half:

"Whatever remains of the said last-mentioned half, I direct my executor to invest in productive funds, upon good securities, and to collect and pay over to my said daughter the interest and income thereof, half-yearly, during her natural life."

cannot be safely acted upon. This rule is criticised in 13 *Am. Law Reg.* 208, and said to be not borne out by the cases cited to support it.

In *Ashhurst* v. *Potter,* 2 *Stew.* 625, 632, Mr. Barker Gummere was of opinion that such an investment by a testator would not justify its continuance by his executors.

See further, in addition to the cases cited in *Perry* and *Am. Law. Reg.*, *Hogan* v. *DePeyster,* 20 *Barb.* 100; *Gray* v. *Lynch,* 8 *Gill* 403; 10 *N. Y. Leg. Obs.* 321; *Lacy* v. *Stamper,* 27 *Gratt.* 42; *Anderson* v. *Gregg,* 44 *Miss.* 170; *McMurtrie* v. *Penna. Co.,* 9 *Phila.* 529, 75 *Pa. St.* 304.—REP.

He provided, also, for the division of the residue between his son and daughter by their mutual agreement, declaring it to be his will that they might, by their own agrement and without sale, by releasing to each other, make division of any and all of the residue of his estate between themselves, so far as they could mutually agree upon the terms of division and the valuation of the property.

By the will he gave to his executor the sum of $10,000 in trust, to be applied towards defraying the expense of erecting a wing to the asylum building of the Newark Orphan Asylum Association, provided the association should procure the necessary additional funds to build and finish the wing, and actually build and finish it within ten years from the time of his death. He further declared it to be his will that, until such additional funds were procured, the $10,000 should be invested in productive funds, upon good and sufficient securities, and the interest and income thereof re-invested in like manner and added to the original sum, and that the whole should, if necessary, be applied to the before-mentioned purpose as soon as the additional funds to be provided by the association should be obtained and the work finished; provided it should be within the ten years. He further declared it to be his will that if funds from other sources should be procured for the purpose of such amount that, they being first applied thereto, any part of his bequest should remain unexpended, then that the residue of his bequest which should so remain unexpended should be invested or put out at interest on good and sufficient securities, and the yearly interest thereof be applied to the general uses and support of the institution. By the codicil, he revoked that bequest, and, in lieu thereof, gave to his executor, in trust, for the same purposes and on the same conditions, and subject to the same limitations, one hundred shares of the capital stock of the Newark Gas Light Company, fifty shares of the capital stock of the Newark Banking Company, and fifty shares of the capital stock of the State Bank at Newark; the dividends or profits arising

3

from those stocks to be collected, applied and disposed of in the same manner as, in his will, the interest of the $10,000 was directed to be applied and disposed of.

The division of the residuary estate, which consisted, in part, of real estate and stock of the Newark Lime and Cement Manufacturing Company, the Newark Gas Light Company, the Mechanics National Bank of Newark, and the Newark City National Bank, was made by the complainant and his sister, her husband consenting thereto; and there were therein set off to the complainant, to be held by him, under the trust declared in the will, in respect to his sister's share of the residuary estate, certain shares of those stocks. All of those stocks are valuable, are above par in the market (the Lime and Cement Manufacturing Company's stock very exceptionally so), and all of them are regarded, by many very prudent business men, as excellent investments for their own money. These shares of stock were, in the division, taken at their market value, and they are still held by the complainant, as trustee for his sister at her request, because she, as well as he, regards them as entirely safe, as well as profitable, investments.

The condition on which the gift of stock to the complainant, for the benefit of the Newark Orphan Asylum Association, was made, has been complied with, the wing has been built, and there still remains, in the hands of the complainant, of that bequest, stock of the value of more than $16,000.

The complainant asks whether the provision of the will as to the division of the residue by him and his sister, is valid, and whether the division so made will be binding, not only as against those who made it, during the life-time of his sister, but afterwards, as against all persons claiming as heirs at law of the testator or otherwise. Also, whether he may, without his sister's consent, dispose of the shares of stock which, in that division, were assigned to him to be held in trust as part of her share of the residue, and invest the proceeds in other securities, and whether it is his duty to make such conversion and investment, and whether he

Ward *v.* Kitchen.

will be liable to be held responsible, pecuniarily, for any depreciation in the value of those stocks should he fail to do so. Also, whether he may lawfully continue to hold, in the stock in which it was invested when the testator died and in which it came to the complainant's hands, the unexpended residue of the Orphan Asylum legacy, or whether it is his duty to convert that stock into cash and re-invest the amount in approved securities.

The power given by the testator, to the complainant and his sister, to divide between them, by mutual agreement, his residuary estate, is valid, and a division *bona fide*, made under it, is binding on all who are affected by or interested in it.

The trust, in respect to all of the daughter's share of the residuary estate, except the $6,000 which were to be at her own disposal, is to invest it in productive funds, upon good securities, and to collect and pay over to her the interest and income thereof, half-yearly, during her natural life. Under this direction, the trustee would not be at liberty to invest the money in the stocks of banks and manufacturing companies, however exceptionally good, without incurring the responsibility of answering for any loss which might occur to the funds, either in interest or principal, by reason of such investment. If no directions are given in the will as to the conversion and investment of the trust property, the trustee, to be safe, must take care to invest the property in the securities pointed out by the law. *Perry on Trusts* § 465; *King* v. *Talbot*, 40 *N. Y.* 76. Nor will the fact that the testator himself made and approved of the investment, in the absence of express or implied directions in the will, relieve the trustee from responsibility in continuing, permanently, an investment made by the testator which the trustee himself would not be justified in making. *Ibid.* But the will itself furnishes evidence that the testator, in this case, intended that the investment should not be in stocks. As appears, by the provisions of the codicil changing the bequest to the Orphan Asylum, he thoroughly understood the difference between

a direction to invest in " productive funds upon good and
sufficient securities " and apply the interest, and the gift of
stocks with direction to apply the dividends.    In the legacy
to Mrs. Brown, and in the gift to the Orphan Asylum, in the
will, the same language is used in the direction for invest-
ment which is employed in the residuary clause in regard
to that part of the residuum which is to be held in trust for
his daughter.    The direction in the residuary clause is " to
invest in productive funds upon good securities, and to col-
lect and pay over to his daughter the interest and income
thereof, half-yearly, during her natural life."    In the provision
in the codicil for the Orphan Asylum, the gift is of specific
stocks, the dividends or profits arising from them to be col-
lected, applied and disposed of as in the will; the interest of
the $10,000 was directed to be applied and disposed of.    The
direction to pay the interest or income to his daughter, half-
yearly, is indicative of the character of investment which
the testator had in contemplation.    The direction to invest
on good securities will be construed to mean investment on
such securities, and on such securities only, as are regarded
by the court as proper for the investment of trust funds.    If
the complainant shall fail so to invest the funds now held by
him, in stocks, in trust for his sister, he will be liable to be
required to make compensation, at least, for any loss of
principal which may occur through depreciation of the
stocks.

The gift to the Orphan Asylum stands on a different foot-
ing.    It is a bequest to the complainant of specific shares of
the capital stock of a gas light company and two banks, in
trust for the same purposes to which, in his will, the testa-
tor had directed the $10,000 to be applied, " the dividends
or profits from the said stocks to be collected, applied and
disposed of in the same manner " as in his will the interest
of the $10,000 was directed to be applied and disposed of.
The complainant is not at liberty to convert this stock into
money (*Neville* v. *Fortescue*, 16 *Sim.* 333; *Boys* v. *Boys*, 28

*Beav.* 436), unless the depreciation, or threatened depreciation, of it should render it prudent for him to do so in order to protect the trust fund, in which case he must act wisely in the emergency.