KINGS COUNTY.—HON. JACOB I. BERGEN, SURRO-
GATE.—December, 1883.

JUDD v. WARNER.

*In the matter of the judicial settlement of the account
of JOHN G. WARNER and GEORGE RICARD, as
executors of, and trustees under the will of ALEX-
ANDER MACDONALD, deceased.*

Bonds of a horse-railroad company, secured by a mortgage upon its tracks,
are not such real estate security as will authorize trustees to invest
trust funds therein.

Upon an accounting by executors and testamentary trustees, it appeared
that, of a fund in their hands to provide for certain trusts under tes-
tator's will, a portion, viz: $18,000, consisted of the bonds of cer-
tain city horse-railroad companies, bearing seven per cent. interest,
and mainly secured by a mortgage upon their tracks, including right
of way, the larger portion of which bonds had been held by testa-
tor at the time of his death, eleven years since. During this period
the bonds had increased in value, and a majority of the persons inter-
ested had signed a written request to the trustees to retain them as
investments. Objection, however, having been made by other par-
ties, it was—

*Held,* that the bonds were not such securities as would justify the trus-
tees in holding them, or protect them in case of loss ; that, in view
of the request mentioned, the court would not direct their conver-
sion, except as to the persons not joining in such request; and that, to
the extent of the shares of those persons, such trustees should be di-
rected to convert, and invest the proceeds in such permanent securi-
ties as are recognized by law as proper ones in which to invest trust
funds.

King v. Talbot, 40 *N. Y.,* 76—commented upon.

HEARING of objection, made by the special guardians of Addie D. Judd and another, infants interested in decedent's estate, to confirmation of report of referee on judicial settlement of testamentary trustees' account. The facts appear sufficiently in the opinion.

DEMAS STRONG, *for executors.*

A. M. MACLAY, *for special guardian.*

JOHN H. BERGEN, *for Elizabeth M. Gray.*

WM. B. HURD, *for Wm. Lockwood.*

THE SURROGATE.—This is an application to confirm the report of the auditor, to whom the accounts of the executors were referred.

It appears, from the accounts and proceedings herein, that an accounting was had in 1875, before the Surrogate of Kings county, and that, by the decree entered in that proceeding, the executors were directed to sell certain railroad bonds, being securities, the larger portion of which were held by the testator at the time of his death, and invest the proceeds in other securities, such as are recognized by law as proper securities in which to invest trust funds. This direction the executors never complied with, but still hold the railroad bonds as representing a part of the trust funds in their hands.

In that accounting, several of the parties entitled to notice were never cited, and consequently not bound by the decree; but, in the present accounting, the omission is sought to be remedied by citing all the parties in interest, and submitting their accounts from

their acceptance of the trust to adjudication. Several objections were filed to the account, but were subsequently withdrawn or conceded by the executors, leaving only the objection of the special guardian, "that the trustees should be directed to convert the city railroad bonds into cash and invest the same in securities of a more permanent nature."

But it appears from the testimony that the executors have the written request of a majority of the parties in interest to retain said railroad bonds; and I am now asked to approve of such investment.

The executors insist that the bonds are a first-class security, and well secured by a mortgage upon real estate yielding seven per cent. interest, which they claim is a much larger income than could be derived from almost any other kind of investment, and that they are justified in retaining such investment, under the decision of King v. Talbot (*40 N. Y., 90*).

I have carefully examined that case, and I do not think it will warrant the construction the executors seek to place upon it. Judge WOODRUFF, in writing the opinion of the court, says: "I am not prepared to say that an investment in the bonds of a railroad, or other corporation, the payment whereof is secured by a mortgage upon real estate, is not suitable and proper under any circumstances. If the real estate is ample to ensure the payment of the bonds, I do not at present perceive that it is necessarily to be regarded as inferior to the bond of an individual secured by mortgage; it would, of course, be open to all the inquiries which prudence would suggest, if the bond and mortgage were that of an individual. The nature, the

location, and the sufficiency of the security, and the terms of the mortgage, and its availability for the protection and ultimate realization of the fund must, of course, enter into the consideration." With this decision in view, my predecessor Judge LIVINGSTON referred the matter back again to the auditor, to take further proof of the value of the real estate mortgaged to secure the payment of the bonds in question. The auditor reports that the fund now in the hands of the trustees is about $38,284.78, to provide for certain trusts under the testator's will, of which $14,000.00 consists of bonds of the Brooklyn city and Hunters Point and Prospect Park railroad company, now known as the Brooklyn Crosstown railroad company, bearing interest at seven per cent. per annum, and said bonds are a part of an issue of $300,000, bonds which are secured by a first mortgage, dated July 1st, 1868, upon all the real and personal estate and franchises of said company. The real estate, according to testimony of its secretary, is valued as follows:

Real property at Greenpoint and
South Brooklyn,    -    -    -    -    -    -    $60,000
   17 miles of single track at the
rate of $15,000 per mile,    -    -    -    -    -    255,000

Total value of real estate which includes track, $315,000

Four thousand dollars consists of bonds of the Park avenue railroad company, bearing interest at seven per cent. per annum, and said bonds are a part of an issue of $200,000, bonds which are secured by a first mortgage, dated October 14th, 1870, upon all its property. It appears that said company has since been consoli-

dated with the Prospect Park and Coney Island railroad company, and that $130,000 of the said bonds have been surrendered to said last named company, and other bonds substituted by said company in their place, thus leaving $70,000 of the original issue outstanding, in which is included the $4,000 in question.

The president of that company testified that "the property on which the $70,000 is a first lien is worth at least $140,000," and the auditor further reports that he is of the opinion that "both classes of the bonds held by said executors are amply secured by first mortgage on real estate in the city of Brooklyn, and are worth more than par, and have not depreciated in value while held by said executors."

It appears from the testimony that the major part of the security, in both classes of these bonds, consists of the tracks, and right to the use of the streets through which the road runs. It cannot be said that they own the fee in the land over which they run. It is true that the courts of this State have held that railroad tracks and the structure are to be deemed real estate for the purpose of taxation, but I do not think that they did or will go so far as to hold that bonds secured by a mortgage upon a horse railroad track are such real estate security as would authorize trustees to invest trust funds therein. But in this case the trustees answer by saying that the greater portion of the investment was made by the testator in his lifetime, and that the bonds have increased in value, and that they are, therefore, justified in retaining them; and, further, that they are requested by a majority of the parties in interest to retain them, and refer me to

several authorities holding that executors and administrators are not chargeable with loss, which has occurred within the usual time in the administration of estates. That presents altogether another question. Had a loss on said bonds occurred within a reasonable time after the death of the testator, and had it been shown that they were acting in good faith, and, in their opinion, for the best interest of the estate, they should not be chargeable with such loss; but in this case the testator has been dead for eleven years, and no such rule applies, for they are holding the fund as trustees.

I am, therefore, of the opinion that they are not such security, as would justify the trustees in holding, or protect them in case of loss.

If they continue to hold them, they do it at their risk, but inasmuch as a number of persons who are ultimately entitled to the fund, have in writing requested and consented that the trustees hold the same, I am not disposed to direct their conversion, except to the extent of the shares of the persons not signing such request, and, as to such shares, the decree should provide that a sufficient amount be converted, and invested in such permanent securities as are recognized by law as proper in which to invest trust funds. In all other respects, the report of the referee may be confirmed.

Ordered accordingly.