In the Matter of the Estate of JOHN M. GREATA, Deceased.

Surrogate's Court, Suffolk County, November 22, 1939.

*Henry L. Brant*, for Winifred H. Maxfield, as executrix of Berton L. Maxfield, deceased trustee.

*Pelletreau & Pelletreau*, for Theodora Larsh, surviving trustee.

*McCombs & Ryan*, for John B. Greata, Jr., remainderman, and for the general guardian of the infant remaindermen.

*Flynt & Sully*, for Charles H. Jackson, as administrator, etc., of George H. Greata, deceased.

*Lincoln G. Schmidt*, special guardian for Eleanor M. Greata and Henry Greata, infant remaindermen.

*Frederick W. McGowan*, for the National Surety Corporation, surety on bond.

HAWKINS, J.   The accounting is intermediate, covering the period from July 15, 1930, to May 25, 1937, when one of the trustees, Berton L. Maxfield, died.   Testator died March 29, 1928, leaving a will probated April 24, 1928, under which three trusts were created, the first two being for $8,000 and $9,000, respectively, and the third for the residue of the estate.   The first two trusts are not in question, the present account relating to the third under which the trustees are directed to pay the income or so much as may be necessary for his proper maintenance to the brother, George H. Greata, with remainder of all three trusts to the three children of a nephew, John B. Greata, equally, namely, John B. Greata, Jr., Eleanor M. Greata and Henry Greata.   The executors of and trustees under this will are the same, Theodora Larsh and Berton L. Maxfield. They rendered their account as executors in 1929 and were discharged as such.   In 1930 they rendered an intermediate account as trustees which was settled by decree of November 17, 1930. The present accounting covers their second intermediate account of their proceedings as trustees from July 15, 1930, to May 25, 1937, when Berton L. Maxfield died.   The determination of the objections to the present account will pave the way for a final accounting of this residuary trust as George H. Greata, the life

tenant, is now deceased. The suggested surcharge to the bill of $500 paid the attorneys, of whom the deceased trustee was one, must be overruled as this bill is not included in any other attorneys' bill and appears to be reasonable in amount for the services rendered and is fully authorized by section 285 of the Surrogate's Court Act. Furthermore, so much of this bill as relates to the services in this court over the Larsh mortgage, the Coates trust and the trustees' bond were covered by court orders and were completed as directed therein.

The suggested surcharge because of the retention by the trustees of the stock in H. R. Mallinson & Co., the Canadian Pacific Railway Company and other railroad stocks because they depreciated in market value is not sustained. These securities came to the trustees from the testator. He was at one time manager of the Bank of Montreal. His will, while directing the trustees to convert any non-income-bearing property into income-bearing property as soon as practicable, authorizes them " to invest the funds of my estate in such securities or property, real or personal, other than those authorized by the law of the State of New York and to do whatever to my executors and trustees may seem for the best interest of my estate." The trustees, therefore, had a wide discretion to obtain competent investment counsel and I think it unquestioned that they acted in good faith throughout. The fact that an expert witness looking backward testified that these stocks should not have been held past certain dates when they could have been sold for more than was the later market price is not controlling as such a conclusion is primarily based upon hindsight which is always safe and certain. To have sold at the times indicated or even before when prices were still higher would have required the trustees to be possessed of foresight and by implication at least to follow the rule to buy at the bottom and sell at the top. One possessed of this ability would soon own the world. Yet during all these times the consensus of the investment counsel's advice was not to sell and the securities attacked are still on hand. One who is ill and seeks, obtains, pays for and follows competent medical advice should not be condemned if he dies. Since the fall of 1929 we have been and still are in a severe depression affecting the prices of securities generally. Since the days of *King* v. *Talbot* (40 N. Y. 76), so often cited, the rule has repeatedly been stated that a trustee who acts in good faith using the prudence and business judgment of a reasonably prudent business man in the conduct of his own affairs is not liable for any loss which may result, and as stated in *Matter of Frazer* (150 Misc. 43, at p. 50): " The rule in *King* v. *Talbot* (40 N. Y. 76) is still the rule of liability for fiduciaries." Moreover,

the light existing at the time is the important thing, not the light which may be used in retrospect. As was said in *Matter of Clark* (257 N. Y. 132, at p. 136): "It has been stated that 'there appertains to the relation of trustee and *cestui que trust*, a duty to be faithful, to be diligent, to be prudent in an administration entrusted to the former, in confidence in his fidelity, diligence and prudence;' that ' the just and true rule is, that the trustee is bound to employ such diligence and such prudence in the care and management, as in general, prudent men of discretion and intelligence in such matters, employ in their own like affairs.' (*King* v. *Talbot*, 40 N. Y. 76, 84, 85.) The statement has been frequently approved. (*Matter of Weston*, 91 N. Y. 502, 511; *Costello* v. *Costello*, 209 N. Y. 252, 261.) In determining whether the acts of a trustee have been prudent, within the meaning of the rule, we must, ' look at the facts as they exist at the time of their occurrence, not aided or enlightened by those which subsequently take place ' (per PECKHAM, J., in *Purdy* v. *Lynch*, 145 N. Y. 462, 475); for it is an obvious truth that ' a wisdom developed after an event and having it and its consequences as a source is a standard no man should be judged by ' (per COLLIN, J., in *Costello* v. *Costello*, *supra*, at p. 262); and it is impossible to say that trustees are wanting in sound discretion ' simply because their judgment turned out wrong.' "

*Matter of McIllwaine* (280 N. Y. 775) is not applicable to the case before me because the case there involved a surcharge against executors for failure to close out a margin account within the seven months after letters testamentary, which was obviously necessary in order for the executor to ascertain whether testator had left any estate or not, while in the case before me the executors had rendered their accounting as such and turned over to the trustees investments made by the testator himself, none of which were at any time held as collateral.

The suggested surcharge against the trustees for their failure to collect an item of $4,000 loaned by decedent to his nephew John B. Greata in 1927 is likewise overruled as it appears that the debtor was not responsible, was a resident of California and the father of the three remaindermen who are now entitled to this estate. Likewise the loan to this nephew of this money savors of a gift as it was apparently a philanthropic act of testator to establish " the boy " in business, which was apparently the main thought of the testator, and that if he could repay, all right — and if not, all right. Contestants offered no testimony to show solvency by John B. Greata and he is at present in the National Military Home at Los Angeles, Cal. Furthermore, this item as uncollectible went through the two prior accountings in this estate in 1929 and 1930 and, consequently,

may not be revived in the present accounting. (*Matter of Roche*, 259 N. Y. 458; *Matter of Chaves*, 143 Misc. 868; affd., 239 App. Div. 900.) It should be carried, therefore, hereafter at zero as it could have been in the two prior accountings.

As to the claim that $4,978.43 was improperly included in principal and should belong to income, to which it may still be transferred, it appears that this item was included in principal upon a prior accounting in which decree was entered November 17, 1930, and to which proceeding the life tenant, George H. Greata, was a party. There comes a time when estates must be considered settled. The remedy for an erroneous direction in a decree is found in subdivision 6 of section 20 of the Surrogate's Court Act, which means having been a party to the accounting proceeding in which such decree is entered, the one feeling aggrieved must move to reopen and ask for a corrected decree with the right of appeal if such application is denied. This was not done and the decree is now about nine years old. (*Matter of Colliton*, 150 Misc. 616, 621; *Matter of Gude*, Id. 56; affd., 242 App. Div. 609; *Matter of Illfelder*, 136 Misc. 430; affd., 232 App. Div. 740; Surr. Ct. Act, § 274.)

As to the objection to the disbursements by the trustees for investment counsel and the Cranston bill for accounting services covering largely income tax returns, it is overruled because I believe they were actually and necessarily made for the benefit of the estate. (*Matter of Staiger*, 249 N. Y. 229, 234.)

It is true that in *Matter of Gutman* (171 Misc. 680) services by investment counsel were disapproved, but it seems to me that decision is too broad and that the circumstances in each case should control and not such a hard and fast general rule. In other words, if one of the large New York banks, like the Chase, National City or City Bank Farmers, was trustee it would have the facilities in its own possession for such counsel to be applied to its own account as trustee and would not need to obtain other investment counsel, while with trustees who are individuals in need of such advice they would necessarily have to pay for it. In *Matter of Kent*, unreported officially, it would appear that Surrogate Foley allowed a similar expense, although not to the full extent claimed. Consequently, I allow these items as actually paid by the trustees for the benefit of the estate.

The attorneys' bill at $2,250 is approved under the stipulation.

Decreed accordingly. Settle decree on notice.