Rollins, Surr.
—The issues raised by the objections interposed to the accounts of Nathan Fernbacher, executor, and Regina Fernbacher, executrix of this estate, are now on trial before a referee appointed by the surrogate. Pending such trial, the party at whose instance the accounting was ordered seeks the revocation of the testamentary letters heretofore issued to the accounting parties and to Samuel Abraham, their co-executor. The ground of this application is the alleged waste and misappropriation by the executors, of the property and assets of the estate and the improvident management of its affairs. The action of her associates in turning over and suffering to be turned over to the executrix individually, and for her own use and enjoyment, the entire estate (after payment of certain legacies bequeathed by the third and fourth clauses of the will, and after certain disbursements specified in the account), and the action of the executrix herself in converting sncli property to her own use, are the main grounds upon which the petitioner relies in this proceeding.
In determining whether those grounds will support the revocation of letters, it is necessary to construe certain provisions in the testator’s will. Of the authority of the surrogate in this regard, under such circumstances as the present, I have no doubt. The reasons that justify the exercise of such jurisdiction in proceedings for the judicial settlement of executor’s *342 accounts are equally applicable here. Those reasons are set forth in Tappen v. M. E. Church (3 Dem. 187).
The testator’s will contains the following provis. ions:
“ 1st. I give and bequeath to my wife Regina Fernbacher all my real and personal estate of whatsoever nature and wheresoever situate, for her life, she to have the same power of sale and control over said property as 1 could have in my own proper person, during her said life estate.
“3d. I give and bequeath to my children or their heirs, share and share alike, all the rest, residue and ‘remainder of my real or personal property in fee absolutely and forever which shall remain after the life estate given in the first provision of this my will to my. wife Regina Fernbacher.
“ 3d. It is my will and I give and bequeath to my daughter Pauline Fernbacher $1,000 of the,insurance ■which is now on my life in addition to that portion of my real and personal property which she shall be entitled to receive under the second provision of this my will.
“ 5th. It is my will and I direct that my sons carry on the business in which I am now engaged without change so long as my wife Regina Fernbacher thinks best.
“6th. It is my will that my said wife Regina Fernbacher shall have power, and she is hereby authorized iii her discretion to pay to all or any one of my children, at any time during her life, all or any part of the share or shares to which all or any one of my said children may be entitled in my real or personal estate under the second provision of this my last will and testament.
“ 7th. I appoint my wife Regina Fernbacher executrix, and Nathan Fernbacher and Samuel Abraham executors of this my last will and testament, with full *343 power to sell, at public or private sale, at such times and upon such terms and in such manner as to them shall seem meet, in order that the terms of this my last will may be carried out, any and all of the real estate or personal property of which I shall die seized and possessed.”
Although the testator left him surviving several children, it is claimed by counsel for the respondents, that after payment of debts and expenses of administration, the testator’s widow, by virtue of the first clause above quoted from the will, acquired the absolute title to all the property left by her husband and to the proceeds of such portion thereof as had been or might thereafter be sold, either under the power given by clause first or under that given by clause sixth ; and the respondent’s counsel insists that if this contention is erroneous, and if the interest of the widow is to be considered as limited to a life estate, she nevertheless has at all times been authorized to exercise for her own benefit absolute “ power and control ” over the property of the estate, and by consuming the same if she saw fit so to do, to defeat the possibility of remainder to the children.
Neither of these propositions commands my approval.
The grant in clause first of “ the same power of sale and control over said property” as the testator himself possessed, does not, when taken in connection with its immediate context, and with after provisions of the will, enlarge to a title absolute the interest which is expressly given Mrs. Fernbacher for life, nor does it authorize either complete or partial absorption by her of the principal of the estate.
In support of the claim of the absolute character of the widow’s interest and of the invalidity of the dispositions in behalf of the children, several cases have been cited by counsol. In these cases the well *344 known principle has been recognized that where a testator has made an unqualified bequest or devise, and has thus evinced his intention that the beneficiary should have absolute property in the thing given, a subsequent limitation over is void because repugnant to the original disposition. Such is the doctrine of Helmer v. Shoemaker, 22 Wend. 137; Jackson v. Robins, 16 Johns. 538; Annin v. Vandoren, 14 N. J. Eq. 135; Downey v. Borden, 36 N. J. Law, 460; Stuart Walker, 72 Me. 145 ; Ide v. Ide, 5 Mass. 500; Patterson v. Ellis, 11 Wend. 259 ; Norris v. Beyea. 13 N. Y. 273 ; Dutch Church v. Smock, Saxton Ch. (N. J.) 148; Jones v. Bacon, 68 Me. 34; Campbell v. Beaumont, 91 N. Y. 464.
But I think it too plain for argument that, whatever may be the true construction of this will, the testator’s widow has not acquired by the clause now Under discussion such an absolute property in this estate as to invalidate the gift over. It is another question, however, whether she is limited to a bare life estafe, with the right to demand.and enjoy nothing more than the interest and income of a principal that is to go to others at her death, or whether her life estate is coupled with a power on her part to receive such principal in her lifetime and appropriate it wholly or in part to her own. use, so that only such portion of it as may not at her death have been disposed of will pass to the children under the .second clause of the will.
Wright v. Miller (8 N. Y. 9, 24), decided in 1853, was a case in which A. had conveyed to a trustee certain real estate with a power during. A.’s life, and with'A.’s consent, to lease or sell the same, and after making .certain disbursements from .the proceeds to pay over the balance “ for the reasonable support and maintenance of the grantor as she may require the same, and as to the residue thereof, if any there shall *345 be, then upon, trust,” &c., &c. The court of appeals held that the limitation over for the benefit of A.’s children was valid, the power of disposition retained by A. being limited to so much of the proceeds of the property as might be needed to defray the expenses of her reasonable support and maintenance during her life.
In 1878 the supreme court of New Hampshire, in Burleigh v. Clough (52 N. H. 267), held that, where a testator gave his wife all her estate “ to her use and disposal during her natural life” with a gift over of “ what is remaining at her decease,” the widow took an estate for life, together with a power practically to defeat the estate of the remainderman, but that the gift in remainder was nevertheless valid as to anything that she might leave at her decease.
In 1875 our supreme court of the fourth department decided Bell v. Warn (4 Hun, 406). A testator had bequeathed $1,850 to his daughter, providing that the same should be invested and that the interest thereon should be paid to her during her life semiannually, and that if from- sickness or want there was need to resort to the principal for her'support, the executor should do so, even to the exhaustion of the entire fund. The will further provided for a gift over of any portion of the $1,250 that might remain at the daughter’s death. It was held that this gift over was good, though the life interest of the first faker was coupled with a power of disposing of the whole estate if such disposition should be needed for her maintenance.
In Terry v. Wiggins (1872), 47 N. Y, 512, a testator gave the residue of his real and personal estate to his wife 61 for her own personal and independent use and maintenance, with full power to sell or otherwise dispose of the same, if she should require it or deem it expedient so to do.” He authorized his executors to *346 invest whatever residue there might be at her decease, &c. By a previous clause in his will the testator had devised to his widow certain real éstate “for her sole and absolute use and disposal.” The court held that the terms first above quoted were to be discriminated from those quoted later, and that the widow took only a life interest in the residue ; the power of disposal not operating to enlarge her estate to absolute ownership, and simply enabling her to encroach upon the corpus of the estate for whatever might be necessary for her personal use and maintenance.
The language of a will construed in 1873 by our court of appeals,-in Taggart v. Murray (53 N. Y. 233),' was as follows : “All my remaining property I give, devise and bequeath to my daughter," Cornelia, for hex-support and comfort, to be held and controlled by her, and at her death to pass to her heirs, and if she leaves no heirs, to be disposed of by her will to whom and for what purpose she may deem right and proper.” Held, that the testator intended a gift of a life estate only, the power of disposition by will being superadded limited, however, upon the event of the life tenant’s leaving no heirs.
In 1876 the court of .appeals in Smith v. Van Ostrand (64 N. Y. 278), "held that a testator’s bequest to his wife of a certain sum of money “ for her support during her natural life,” and his direction that, upon her death, the “ said dower” should be transferred to his three children, when taken in connection with the following provision—“ $50 of the above named sum shall be paid her as soon as possible after my decease, and the remainder on or about six months after ”—' must be construed as a gift of so much of the principal fund as might be necessary for his widow’s support and so much only ; and that the gift of the remainder, subject to the exercise of the power, was valid and effectual.
*347 Thomas v. Pardee (12 Hun, 151) was decided in 1877. There a testator gave his wife all his estate, “ to be possessed and used by her at her discretion and for her support and comfort during her natural life, having confidence in her that it will be used and retained, and the amount, the increase and the residue left sacred to the purposes,” &c. This was followed by a gift over of what might be left by the widow at her decease. She was declared entitled to draw principal and interest so far as the same might be necessary for her support, but the gift over was sustained.
Flanagan v. Flanagan (8 Abb. N. C. 413) was determined in 1880. By the will there construed a testator had given one-third of the residue of his estate to his wife “ to be hers absolutely.” He had also given her “ the use of all the remainder during her life, aud the portion left of said remainder to A. B., &c.” It was held that the words “left of said remainder” implied a right superadded to the rights of a life tenant to make disposition of the principal, even to its complete exhaustion and the consequent defeat of the limitation over; but it was nevertheless held that such limitation was a valid disposition.
From the cases above cited the case at bar can be clearly distinguished. I find in the language of the will before me nothing that warrants the interpretation that the widow of this testator is entitled to any portion whatever of the principal estate wherein she is given a life interest. By the first clause of the will, on the contrary, whether It is considered by itself or in the light of the remaining clauses, it seems to me that a life interest pure and simple is intended to be conveyed.
In the well known case of Bradley v. Westcott (13 Vesey, 445), Sir William Grant as master of the rolls, contraed a will whereby a testator gave certain property to his wife “for and during the term of her *348 natural life, to be at her fall, free and absolute disposal and disposition during her natural life.” The widow was also given a power of appointment. In default pf its exercise there was a gift over to certain designated persons. The court said : “As the testator had given to her” (his wife) “in express terms an interest for life, I cannot, under the ambiguous words afterward thrown in, extend that interest to the absolute property. I must construe the subsequent words, with reference to the express interest for life, previously given, that she is to have as full, free and absolute disposition as a tenant for life can have.”
In Smith v. Bell (6 Peters, 68), where a testator had given his personal estate to his wife “ to and for her own use and benefit, and disposal absolutely ; the remainder of said estate after her decease to be for the use” of the testator’s son, it was held that the wife took a life estate only. Marshall, C. J., pronouncing the opinion of the court, said; “If the first bequest is to take effect according to the obvious import of the words taken alone, the last is expunged from the will. The operation of the whole clause will be precisely the same as if the last member of the sentence were stricken out; yet both clauses are equally the words of the testator, are equally binding and equally claim the attention of those who may construe the will. We are no more at liberty to disregard the last-member of the sentence than the first. . . ... The first part of the clause, which gives the personal estate to the wife, would undoubtedly, if standing alone, giye it to her absolutely. . . . The difficulty is produced by the subsequent words. They are: “which personal assets I give and bequeath unto my said wife, to and for her own use and benefit and disposal absolutely.” The operation of these words, when standing alone, cannot be questioned. But suppose the testator had added the words “ during her life.” These words would *349 have restrained those which preceded them ; and have limited the use and benefit, and the absolute disposal given by the prior words, to the use and benefit, and to a disposal for, the life of the wife. .... Even the words 6 disposal absolutely’ may have their absolute character qualified by restraining words, connected with, and explaining them to mean, such absolute disposal as a tenant for life may make.”
Brant v. Virginia Coal Co. (93 U. S. [3 Otto], 320, 326), was a case in which a testator had bequeathed to his wife all his real and personal estate, .... 6< to have and to hold during her life and to do with as she sees proper before her death.” Field, J., pronouncing the opinion of the court, said s “The interest conveyed .... was only a life estate. The language used admits of no other conclusion, and the accompanying words, 5 to do with as she sees proper before her death,’ only conferred power to deal with the property in such manner as she might choose consistently with that estate.” The learned justice added that “where a power of disposal accompanies a bequest or devise of a life estate, the power is limited to such disposition as a tenant for life can make, unless there are other words clearly indicating that a larger power was intended.”
In Boyd v. Strahan (36 Ill. 355), a testator’s bequest to Ins wife of all his personal property “ to be at her own disposal and for her own proper use and benefit during her natural life,” was held to give her a life estate simply.
The following testamentary provision was under consideration in Cory v. Cory (37 N. J. Eq. 198) ; “I give all my estate to my wife for her sole use and bene- • fit for and during her natural life, to be under her control and used by her as she sees fit to use the same, and in case she should find it necessary or see fit to dispose of any.part or ail of the same, I empower her, *350 &c. . . . After the death of my wife, I order my executors to sell all my estate remaining at her decease, and to dispose of the proceeds as follows,”' &c. Held, that the widow was entitled to a life estate only.
A similar construction was in Stuart v. Walker (72 Me. 145), put upon the words following: “All my estate, real and personal,...... with the right to use, occupy, lease, exchange, sell or otherwise dispose of the same and the increase and income thereof according to her own will and pleasure during her lifetime. . . . And so much of said estate ...... as may remain unexpended and undisposed of by her at her decease, I give,” &c.
It is claimed by counsel for the executors that by sections 81 and 85, title 2, chapter 1, part 2, Revised Statutes (3 R. S. [7 ed.] 2189), this testator’s widow obtained under the will an absolute fee or interest, subject only to the taking effect of the remainder given to the children, in the event that the power of sale should not be exercised in the widow’s lifetime.
. But these sections, by their very terms, are only operative where there is an “ absolute power of disposition not accompanied by any trustand in my judgment have no application to the case at bar.
Upon the authorities above cited, I hold that it has never been possible for Mrs. Fernbacher, by the exercise of any power derived from the will of her husband, to acquire any personal interest in the property left by him at his death or in the proceeds of its sale, than such as pertains to a life estate.
The conclusion thus warranted by decided cases as to" the meaning of the first clause of this disputed paper is discovered upon examination co be in harmony with the clauses that follow. The second clause bequeaths to the children “in fee absolutely and forever the residue and remainder of the testator’s real or” (i. e. and) “ personal property,” which shall remain after the life *351 estate given in clause first. Here is a disposition of the remainder after a precedent life estate ; that is, of what is left after the life estate has been carved out of the fee. There is in these words no suggestion that the life beneficiary, by wielding the power of disposition. can appropriate the entire estate to her own benefit, and that the children are to enjoy only such part of file property as the widow may chance to leave at her death. Nor are the provisions in the third, fifth and sixth clauses in harmony with such interpretation. Those provisions, in connection with clause second, show that the testator intended to give his wife a simple life interest, with power of converting the character of the property of the estate, and at her death to give his children the principal of such estate, whether it should then wear its original shape or should theretofore have assumed another.
If is unnecessary to cite authorities In support of that established canon of interpretation, that, in construing a will, the testator’s intention must be sought from the instrument as a whole, and that its several provisions must be accorded such enlarging, restricting or qualifying effect, as seems most consistent with the purposes of its maker.
When this will is thus construed there is scarcely room for doubt that the power of sale given to the widow, and that given subsequently to the executors, were intended to be exercised, not for the widow’s benefit exclusively, but for the benefit of the remaindermen as well, who will be entitled at their mother’s death to receive without impairment or diminution the principal estate of which she will have had the life enjoyment. In this sense the power conferred may justly be regarded as one of trust, with which sections 81 and 85, above cited, are in no wise concerned (Coleman v. Beach, 97 N. Y. 545,558; Thomas v. Pardee, Smith v. Van Ostrand, Flanagan v. Flanagan, supra).
*352 Now, in view of the relation, which the widow and children'of lilis decedent sustained towards the estate, it was clearly the duty of the executors to collect as soon as practicable the personal property left by décedent, including, of course, the proceeds of any of the realty sold by them or coming to their hands. This duty they owed to the remaindermen, who were entitled to be informed of the true nature, condition and value of the assets, and to have such of them as were outstanding realized and recovered ; and this entirely irrespective of the question whether the executors were or were not authorized to turn over all the property of the estate to the life beneficiary without security for its preservation for those éntitled in remainder.
Now it appears that in 1877 an account was filed with thesnrrogate by Nathan Fernbacher, Regina Fernbacher and Samuel Abraham as executors. Another was filed by Nathan Fernbacher and Regina Fernbacher in the pending accounting proceeding before its issues were submitted to the referee. In the place of the latter a third has been since submitted.
The latest account shows that, in that of 1877, the executors failed to include certain assets of whose existence they must then have been advised. The statement in schedule Gr of the last account of the transfer by the accounting parties to the widow of such part of the assets contained in schedule A as had not been applied to the payment of debts and expenses of administration, shows that such assets were so transferred with the knowledge that the widow was about to convert them to her own use and with the object of affording her opportunity of so doing. In the account of 1877 the business of the decedent was alleged to have been sold by the widow to her sons Nathan, Isaac and Philip for $6,000. In the account recently submitted to the referee that business is *353 declared to have been' sold for the sum of $10,000, payable on demand. It is further alleged that “ no demand of payment has ever been made, as the widow was directed by the testator prior to his death to give the business to his sons should she see fit and as she was authorized to do under his will.”
No direction of the testator such as is thus described would have been effectual to confer the authority claimed, nor is any such authority conferred bjr the will. The conduct of the executors in omitting from the first account assets with which they should then have charged themselves, and which, as I think, they intentionally omitted, the subsequent conduct of these accounting parties in falsely representing the sum for which the testator’s business was disposed of, in neglecting to realize or to make any effort for realizing the amount for which the account last filed declares the business to have been actually sold, and in surrendering the entire assets of the estate to the widow, furnish sufficient proof of the improvident management of the estate, and of misconduct on the part of the executors, to justify their removal from office.
It is urged by counsel for the respondents that, even if his contention respecting the extent of Mrs. Fernbacher’s interest in the estate is erroneous, her co-executors were not at fault in surrendering the estate into her hands without requiring security for the remaindermen.
The law upon this general subject does not seem to be well settled.
In Westcott v. Cady (5 Johns. Ch. 334, 349), the chancellor said: “Formerly the cestui que trust or legatee, entitled in remainder after an estate for life, was allowed to call upon the legatee for life, not only for an inventory, but for security that the goods should be forthcoming at his decease. But the rule of practice has since been altered on that point.” Some *354 years later, in Covenhoven v. Shuler (2 Paige, 122, 132), the chancellor said : “ Thé modern practice in such cases” (that is, in cases of bequest for life with limitation over of specific articles), “ is only to require an inventory of the articles, ......■ and security is not required unless there is danger that the articles may be wasted or otherwise lost to the remainderman.”
It would seem, from later decisions of the courts of this State, that under ordinary circumstances, executors should not turn over property to one who has simply a life estate therein, when such property is given in remainder to another, without obtaining from the first taker security for the protection of the remainderman (Tyson v. Blake, 22 N. Y. 558; Montfort v. Montfort, 24 Hun, 120; Livingston v. Murray, 68 N. Y. 485).
Some of the clauses of this will, however, indicate that it was the testator’s design to intrust to the life beneficiary the full possession and control of this estate. Where there is an expression in a will of such an'intention, its executors are warranted, unless there are special circumstances making such a course hazardous, in surrendering the principal of the estate to the care of the life tenant without requiring security (Fiske v. Cobb, 6 Gray, 144; Weeks v. Weeks, 5 N. H. 326; Taggard v. Piper, 118 Mass. 315; Flanagan v. Flanagan, supra; Smith v. Van Ostrand, supra).
The ground upon which the severity of the old practice has been somewhat abated, is doubtless this : that for the court to decree security in all cases would often defeat the purposes of the testator. But whenever it has appeared that property bequeathed for life with remainder over has been in danger of being, wasted, secreted or removed, the courts have held that the interests in remainder were entitled to be protected t>y compelling the life tenant to give security (2 Perry on Trusts [3 ed.] § 541).
*355 The same regard to a testator’s intentions which led the chancery court to abandon the practice of requiring security as of coarse, upon the mere application of a remainderman whose interests were in rro practical danger, demand the exaction of security where the testator’s intentions are otherwise likely to be frustrated by the conduct of the tenant for life.
Now in this case there is the exceptional feature of the purpose on the part of the life beneficiary (a purpose well known to the other executors, and practically countenanced by them), of wasting the fund and of destroying the interests of the remaindermen therein, by converting and appropriating it to her individual use and benefit.
Under these circumstances, it seems to me that the executors were grossly remiss in failing to obtain security for the secure transmission to the remaindermen of the principal of this estate.
This failure I regard as evidence of misconduct and improvident management by the executors, and of unfitness for the due administration of their trusts.
It is the general practice to defer the determination of an application of this character, pending accounting proceedings, until such proceedings have terminated, but the undisputed facts and the disclosures of the papers submitted herein, satisfy me that no injustice will be done to these executors by directing their immediate removal
Let a decree be entered accordingly.
II. January, 1886.
Before the entry of a decree conformable to the foregoing decision, the surrogate consented to hear the parties to this proceeding upon the question whether an appeal from that decree could be made effectual as a stay of proceedings for its enforcement; and if so, *356 then, in order to secure that result, what should be the penalty of the undertaking.
Rollins, Surr.—Upon careful examination of the various provisions of article 4, title 2, chapter 18, of the Code of Civil Procedure, I am convinced that the operation of the' decree removing the executors and trustees cannot be prevented by appeal; and that to make an appeal otherwise effectual, it is only necessary to give an undertaking under section 2577 for the sum of $250.
! Section 2584 provides that a perfected appeal shall operate as a stay “ except as otherwise expressly prescribed, in this article.”
Now it is among other things expressly prescribed, in section 2583 that an appeal from a decree suspending an executor, or removing and suspending a testamentary trustee “does not stay the execution of the decree or order appealed from.” Sections 2578 and 2579 make special provision for the exacting of extraordinary security in the cases in such sections referred to, and section 2580 indicates the mode of ascertaining the amount of the security to be exacted in those cases and in those cases only.
In the third paragraph of that section, which begins with the words “ in every other case it must be fixed by the surrogate,” the word it refers, not generally to “ the sum specified in an undertaking,” but particularly to “ the sums specified in an undertaking executed as prescribed in either of the last two sections ” (2578 and 2579). In the cases provided for in sections 2578 and 2579 the appeal is perfected by giving the special security, and thereupqn proceedings are stayed by the operation of section 2584. In the cases for which section 2583 makes provision, though the appeal is not effectual for any purpose, until the $250 undertaking has been given, there is no provision for exact *357 ing or accepting any other undertaking than that, and the giving of that does not effectuate a stay.
As to costs and counsel fees, I have repeatedly called attention to the fact that the authority of the surrogate is limited by the restriction of section 2561. The maximum amount is $70, and $10 for the number of days (less two) necessarily occupied in the trial or hearing upon the merits (Walton v. Howard, 1 Dem. 103; Du Bois v. Brown, 1 Dem. 317)
No appeal was taken.