### *In re* SHIPMAN'S ESTATE.

(*Surrogate's Court, New York County.* January 11, 1889.)

1. HUSBAND AND WIFE—CONTRACTS OF WIFE—EMPLOYMENT OF PHYSICIAN.

    A husband is liable for the services of a physician to his wife, unless a special agreement on the part of the wife is shown.

2. EXECUTORS AND ADMINISTRATORS—LIFE-INTEREST IN FUND.

    An executor who is also life-tenant of a fund bequeathed will not be allowed to retain possession of the fund after final settlement of his executorial accounts, unless he gives bond to secure the remainder-man.

3. REFERENCE—WHO MAY BE REFEREE—SURROGATE'S ASSISTANT.

    An assistant to the surrogate cannot act as referee in a matter pending in the surrogate's court without the written consent of the parties.

On settlement of the accounts of the executor of Harriet C. Shipman, deceased.

*Lewis L. Delafield,* for executor.    *Meyer Butzel,* for special guardian.

RANSOM, S.    This matter was on the calendar on October 18, 1888, for the purpose of hearing argument upon the exceptions interposed by the special guardian to the account of the executor.    One of the objections raised was to the payment by the executor of a certain claim of a physician for services rendered to the deceased in her last illness.    The surrogate directed that testimony be taken before an assistant, as to an alleged contractual relation between the deceased and the physician.    An order of reference was entered upon that direction, and the whole matter now comes up for determination.

The objections raised by the special guardian present two questions: (1) The decedent engaged a physician during her last illness, and the executor (her husband) paid the bill.    The guardian claims that this payment out of the funds of the estate was improper, and that the husband was liable for the debt.    (2) Whether the life-tenant should retain possession of the residuary estate without giving bonds.    The testimony shows that it was not customary among physicians in good standing, when called to attend patients whose social position is known, to make any definite arrangement with reference to the payment of compensation, and nothing was said by the deceased as to the compensation.    The law is that, in the absence of any special agreement on the part of the wife to pay, the husband is liable; and the married women's acts have not changed this rule of the common law.    *Cagney* v. *Ovens,* 2 N. Y. Supp. 319; *Freeman* v. *Coyt,* 27 Hun, 447.    The cases cited by counsel for the executor in support of his contention are clearly distinguishable from the case at bar.    In the case of *Baker* v. *Burris,* 16 Wkly. Dig. 270, the married woman who was held liable contracted in writing with the plaintiff to do the work, and subsequently acquired title to the property on which the work was done.    In *Tiemeyer* v. *Turnquist,* 85 N. Y. 516, the contract of purchase was made by the wife on her own account and her own credit, after credit had been refused to her husband; and she promised explicitly to pay the debt as an inducement to make the sale.    In the report of the case of *Muller* v. *Platt,* 31 Hun, 121, the facts stated are too meager for the purpose of comparison and criticism.    In *Conlin* v. *Cantrell,* 64 N. Y. 217, there was also an express promise on the part of the defendant to pay the debt out of her separate property, viz., the rents.    It will be thus seen that in all these cases there was either an express promise by the wife, or facts of equivalent significance.    The claim that the life-tenant is entitled to receive the whole residuary estate without giving bonds or security of any sort, is likewise unfounded and untenable.    Under ordinary circumstances executors should not thus turn over the property to one who has simply a life-estate therein, when such property is given in remainder to another, without first taking security for the protection of the latter.    *Matter of Fernbacher,* 17 Abb. N. C. 354.    I see nothing in the provisions of the will manifesting a different intention on the part of the testatrix.    The objections are sustained.

### ON SETTLEMENT OF DECREE.

(February 2, 1889.)

RANSOM, S.    On the 11th of January the surrogate rendered a decision sustaining the exceptions made by the special guardian to the account of the executor, which was filed herein for judicial settlement, and decided, among other things, that the claim of the executor that the life-tenant was entitled to receive the whole residuary estate without giving bonds or security was unfounded.    Two decrees are submitted.    That on behalf of the executor provides that the executor shall pay over to the life-tenant the residuary estate upon the delivery of a receipt and inventory, and shall give a bond, with securities, to be approved by the surrogate, etc.    Further, that unless the

life-tenant shall elect to receive the property upon the terms specified, the executor shall retain possession and custody of the estate, subject to the execution of the trust created by the will. The special guardian objects, and submits a decree providing that in default of giving bonds within 20 days the money shall be deposited in a trust company. The special guardian makes the point that, if the executor's order is signed, the same party will be appointed both trustee and *cestui que trust*, and that the decision of the surrogate that the life-tenant should not receive possession of the residuary estate without giving security would be defeated. It will be noticed by considering the will that the executor is not thereby constituted a trustee. Inasmuch as the functions of the special guardian will cease with the entry of this decree, the necessity for a provision therein, providing for the event of the non-performance of the direction that a bond be furnished, is essential. It will be noted that the counsel for the executor concedes that by retaining the money in his hands the executor becomes a trustee, for the alternative provision in his decree recites "that Edgar J. Shipman, the executor of the said last will and testament of Harriet C. Shipman, deceased, shall retain the possession and custody of such estate, subject to the execution of the trust created by the said last will and testament." He must be aware that, under the provision of the will, as above stated, the executor is not constituted a trustee. This being an accounting for the purpose of judicial settlement, the functions of the executor will cease with the entry of this decree and compliance with its directions. It is a well-settled principle of law that the same person cannot be trustee and *cestui que trust*. *Bundy* v. *Bundy*, 38 N. Y. 410; *Rogers* v. *Rogers*, 18 Hun, 409. Some question might even be made as to whether the life-tenant was properly acting as executor, for in the decision of *Dox* v. *Backenstose*, 12 Wend. 542, it is said that an executor, by the Revised Statutes, is made a trustee. Of course this decision does not go so far as to hold that he is technically a trustee, but merely that, like any other custodian of funds, he is in possession thereof as trustee, though without the formal technical incidents of a trust. There being no trustee under the will, the executor's duties ceasing with the entry of the decree, and, being himself incapable under the law of acting as trustee, is not a case presented like that where the testamentary trustee dies or becomes disqualified? The executor is in effect a trustee by virtue of his office as executor, and has control and possession of the funds. By virtue of his life-tenancy he is the beneficiary, thus combining in himself all the control incident to an absolute title. This was certainly not contemplated by the testatrix. There is no guardian for the infant remainder-man. Her father is disqualified from becoming such by reason of the conflict in interest between himself and his child. Consequently, if the decree presented by the executor is signed, there will be no person who can protect the interests of this infant, and take proceedings in case of waste by the executor. The decree to be entered herein should direct the executor to pay the life-tenant the residuary estate, upon giving a bond, etc., and upon his failure to do so within a certain limited time, directing the special guardian to apply to the court for the appointment of a guardian of the estate of the infant remainder-man, who might then proceed in the matter. I hold that the executor should not receive or retain the custody of this fund either as executor or life-tenant without giving bonds. The affidavit of the special guardian shows 23 days on which substantial service was rendered. He was successful in his exceptions, and it was through him that the matter discussed above was brought to the attention of the surrogate. Other days are specified in which he performed some slight service. He is allowed $250. The amount of commissions are fixed at $412.70. The bill of costs presented by the executor is allowed. The disbursements for stenographer's fees are not substantiated by any affidavit or certificate, but an inspection of his transcript is sufficient to justify the

charge made. In this matter Mr. Underhill was appointed referee. Being an assistant to the surrogate, he could not act as referee except upon the written consent of the parties. No such consent has yet been filed. If the consent to the appointment of the assistant as referee is filed, the amount of $24, which is claimed in the bill of costs of the executor, cannot be allowed, for the reason that the referee's report and the affidavits, both of the executor and special guardian, show but one day upon which the parties appeared before the referee. The same should therefore be reduced to six dollars, in case the consent is filed, and will be entirely disallowed otherwise.

## ON MOTION FOR REARGUMENT.

### (March 6, 1889.)

RANSOM, S. This is a motion for a reargument of the questions arising on the settlement of the decree. I hold that the executor, who is likewise the life-tenant, should not receive or retain the custody of the residuary estate, either as executor or life-tenant, without giving bonds. The rule of law prohibiting a life-tenant from receiving the residuary estate without giving bonds is based upon the ground that in no other way can adequate protection be afforded to the remainder-man. It appears to be a disqualification attaching to the person. The fact that the executor and life-tenant is likewise the general guardian of his child, the remainder-man, is an additional reason against his retention of the funds without security. By holding the contrary, as so ably argued in the executor's behalf, the last safeguard for the minor is destroyed, and the only channel through which his interests might be protected is practically closed. The whole theory of the law is against any person, however high his standing may be,—his probity unquestioned,—combining in himself so many and such conflicting interests; and I doubt if the supreme court would appoint him guardian if the facts as they are now presented were before it. I am of opinion that upon a mere suggestion of the state of facts now existing it would revoke the appointment. The rule that a man shall not unite in himself, except under extraordinary circumstances, the positions of trustee and *cestui que trust*, are based upon grounds of public policy. "Any agreement which in itself is, or which contemplates or involves or requires, or is calculated to induce, a dereliction or laxity in the performance of the public or private duty of men, is void." Greenh. Pub. Pol. 306. The reason for this principle in the law of contracts applies with greater force in a case of this character. The assumption of such conflicting duties and responsibilities is liable to tempt officials from the honest discharge of their duties, and is therefore in contravention of public policy. If tolerated, they would sap the foundation on which official honesty rests, and legalize temptations which would lead from duty many an official who, without such inducement, might perform his duty. The Civil Code of California (section 2232) provides that "no trustee, so long as he remains in the trust, may undertake another trust adverse in its nature to the interest of his beneficiary in the subject of the trust, without the consent of the latter;" and this section is but a further application of the principle, stated in another form in section 2230 of the same Code, that the trustee must not place himself in a position inconsistent with his duty to his beneficiary. It is likewise provided by section 2233 of the said Code that "if a trustee acquires any interest, or becomes charged with any duty, adverse to the interest of his beneficiary in the subject of the trust, he must immediately inform the latter thereof, and may be at once removed."

Counsel for the executor contends strenuously that the executor is not a trustee. Upon the argument of the exceptions to the report of the referee, where the special guardian urged that the life-tenant should be required to give security before taking possession of the residuary estate, the counsel for

the executor insisted that testatrix intended that the life-tenant should retain actual custody of the estate without giving bonds.   In this connection attention is called to the case of *Smith* v. *Van Ostrand,* 64 N. Y. 282, cited in the brief of executor's counsel, where it was held that the testator may confide a fund to a legatee for life, trusting to such legatee to preserve the fund for the benefit of those entitled to it in remainder, and in such case the legatee for life becomes trustee of the principal fund during the continuance of the life-estate.   This would constitute him a testamentary trustee.   It may add some force to the suggestions already made, that the executor is in effect and for all practical purposes, under the circumstances existing in the case at bar, a trustee; that by the English trustee act of 1850 the words "trust" and "trustee" are defined as extending to and including "the duties incident to the office of personal representative of a deceased person."   "Executors   *   *   *   hold the property of their testators   *   *   *   in trust for the payment of debts and legacies, and for the application of the surplus according to the will of the testator;   *   *   *   and courts of equity proceed in cases of this kind as in the execution of trusts."   Tiff. & B. Trusts, 483.   The executor always takes the legal title to the personal property of the testator as trustee.   *Bowers* v. *Smith,* 10 Paige, 199.

All the cases cited by the executor's counsel recognize that security should be taken for the return of the principal at the termination of the particular estate.   If it is permitted to go into the hands of the legatee, they all look to the protection of the interest of the remainder-man as against the person who has possession of the residuary estate.   Now, the fact that this person happens to hold, likewise, the position of executor, does not obviate the necessity for this requirement.   He is none the less likely to dissipate or misappropriate the funds on that account.   It is against just such misappropriation, dishonesty, or improper investment of the funds that the rule is intended to guard. A person who holds property simply as trustee, or as executor, will seek to guard chiefly the *corpus* of the estate, and could not be tempted to injudicious investments in order to increase the revenues, whereas the person entitled to the income might, with the most honest intentions, run greater risks in order that the income from the principal might be enlarged.   This is the evil which the law seeks to remedy, and the disastrous result which it seeks to prevent by requiring security.

Executor's counsel quotes from the decision in *Montfort* v. *Montfort,* 24 Hun, 120: "That a duty devolved upon the executors to protect and preserve the fund for those entitled in remainder."   Is it not anomalous to require a man to protect some one against himself,—to preserve the interests of another against his own misconduct or incapacity?   Suppose the fund should remain, as claimed by the executor, and occasion should arise for complaint as to his management of the fund, would Mr. Shipman, as life-tenant, complain that he himself, as executor, was wasting the funds? or would he, as guardian of his child, complain against his own acts as executor?   As a matter of fact, there would be nobody who could complain.   He would represent in himself every interest entitled to institute proceedings for waste, misappropriation, or other misconduct.   In the case of *Marlett* v. *Marlett,* 14 Hun, 313, the precise point at issue here was not determined.   There the court expressly refrained from construing the will, and it would have been an important factor in determining, if a bond should be given, whether the executrix, who was also life-tenant, had the power to dispose of the property during her life-time; for, in the event of the exercise of that power, there would be no remainder to protect.   In *Bundy* v. *Bundy,* 38 N. Y. 410, the judgment appealed from provided that the executors, upon giving proper security, should continue in charge of the fund, and that position was approved by the appellate court. They say: "In this there was no error.   The will not having designated a trustee for this purpose, it was competent for the court to appoint a trustee.

This may be regarded as such appointment." While the executor and executrix were not constituted trustees by the will, the court held that they might act as such, but upon giving bond. It also held that the executrix could not act as trustee for that portion of the estate as to which she was *cestui que trust.* See, also, *Postley* v. *Cheyne*, 4 Dem. Sur. 501.

But one case has been cited by counsel for the executors which at all embarrasses adherence to the views heretofore expressed by me,—the case of *Moke* v. *Norrie*, 14 Hun, 128. In that case it was contended that the word "executors" did not include an executrix for the purpose of constituting her a trustee under the will, the "executors" being constituted trustees. One of the arguments urged to sustain this interpretation was that, if she were not excluded, she would be constituted a trustee for herself. The court held, (page 132:) "If this fact were fatal to a trust, its effect, we think, would be limited in this case to the portion which is for her own special benefit. But as the law is now settled that a *cestui que trust* is not absolutely excluded from occupying the relation of trustee for his own benefit, and especially is this so where he is but one of several trustees." It will be noticed that the general term (Judge DAVIS writing the opinion) entirely ignored the leading case decided by the court of appeals,—*Bundy* v. *Bundy.* The case of *Hovey* v. *McLean*, 1 Dem. Sur. 396, is not an authority here, for, in the language of the surrogate, there was a grave question of construction of the will, whether the executrix did not have an absolute power of disposition of the personal estate. In *Rogers* v. *Rogers*, 18 Hun, 409, referred to in the brief of executor's counsel, it is claimed the general term "sustained the right of the beneficiary in the trust to execute the same as trustee thereof." That case, so far as the opinion shows, held that because the trustee was likewise *cestui que trust* would not render the trust void. In effect, the opinion recognizes the impropriety of the same person acting as trustee and *cestui que trust;* for the court says that, if any of the other trustees named in the will had qualified, it would have been proper to direct that the trustees, other than the widow, should apply to her use what was her right under the will. This case was taken to the court of appeals, and the decision will be found in 18 N. E. Rep. 636. There the court squarely decided that as to the portion of the trust-estate of which the widow was beneficiary she was incompetent to act as trustee. The court also held that, although the trustees other than the beneficiary might die or decline to act, the court has power to supply their places, or, if need be, take upon itself the execution of the trust so far as it ought not to be executed by the trustee who is also the beneficiary. See, also, opinion of general term (DAVIS, P. J., writing) in *De Rivas* v. *De Herques*, reported without opinion in 24 Hun, 341, and afterwards affirmed by the court of appeals on the general term opinion, and reported only as a memorandum in 85 N. Y. 645. The law seems to be that, except where there is a power given to the life-tenant to dispose of the funds, either absolutely or for certain purposes, the general rule, that the same person cannot be trustee and *cestui que trust*, applies. *Rogers* v. *Rogers*, *supra; Marlett* v. *Marlett*, *supra; Hovey* v. *McLean*, *supra; Smith* v. *Van Ostrand*, *supra.*

The reason for the rule disqualifying executors or other trustees from entering into contracts with their *cestuis que trustent* applies with equal force in this case to prevent the petitioner from occupying those conflicting relations. "This rule is based upon our recognized obligation from placing ourselves in relations which ordinarily excite a conflict between integrity and self-interest. The disability to purchase in such cases is a consequence of that relation between the parties which imposes on the one the duty to protect the interests of the other, from the faithful discharge of which duty his own personal interests may withdraw him. In this conflict of interests the law wisely interferes. It is true that a sense of duty may prevail over motives of self-interest, but it is equally true that the dictates of self-interest may exercise a pre-

dominating influence, and supersede those of duty. Experience has taught that it is not well to subject men to so severe a trial." See Tiff. & B. Trusts, 484. Motion denied.