---

## In re KETELTAS' ESTATE.

*(Surrogate's Court, New York County. May 20, 1889.)*

**1. TRUSTS—INVESTMENTS—POWER OF TRUSTEES.**
    The testator authorized his trustees "at any time when they should deem it proper to do so, to sell, lease, mortgage, or convey all or any portion of said property, execute any assignment, and invest and reinvest the same in such manner and such securities as to them shall seem advisable. " *Held*, that the trustees exceeded their authority by investing in railroad bonds, the same not being securities for permanent investment, and the parties interested can hold them for any loss by depreciation of the investment.

**2. SAME—ACCOUNTING—SEPARATE FUND.**
    The investment made by the trustees, of money belonging to the *cestui que trust*, but not coming from the estate of decedent, should not be taken up and accounted for by them as trustees under the will.

On accounting by the trustees of the estate of Eugene Keteltas, deceased.

*John E. Parsons*, for trustees. *Benjamimin T. Kissam*, for Henry Keteltas. *C. Bainbridge Smith*, for Eugene K. Smith. *W. J. C. Berry*, special guardian, for J. Gardiner Keteltas and Philip D. Keteltas.

RANSOM, S.   This was an accounting by trustees of a specific trust created by the will of the decedent for the benefit of an insane son.   The trustees received from the estate various securities, the face value of which is something over $27,000.   About $4,000 in amount of these identical securities are still retained by the trustees, the interest being paid regularly.   The trustees, prior to 1884, invested in certain railroad bonds.   Three thousand dollars of these (the Houston, Texas & Central) have defaulted in interest since 1884.   The investments in railroad bonds are objected to, and the contestant claims that the trustees should be required to sell the securities, and make good any deficency in the capital.   In addition to the investments heretofore stated, they have invested accumulations of interest and money received on redeemed bonds, and on other securities of a similar character.   These investments have been made upon miscellaneous securities.   Upon this question of the legality or the illegality of the investments made by the trustees, a very close case is presented.   Much, of course, will depend upon the peculiar language used by the testator in creating the trust and defining the power of the trustees with reference to sales and investments.   The language of the will is as follows: "To collect the income   *   *   *   and apply the same to the use of my said son during his natural life.   *   *   *   And I do hereby authorize and empower the said trustees [naming them] and their survivors,   *   *   *   at any time,   *   *   *   whenever they shall, in their discretion, deem it proper to do so, to sell, lease, mortgage, or convey all or any portion of the said property,   *   *   *   and execute any assignment, etc.,   *   *   *   and invest and reinvest the same in such manner and upon such securities as to them shall seem advisable."   The referee held that this general authority conferred upon the trustees power to make the investments objected to.   He also finds that such investments have benefited the estate; their present value, with the interest which has been received, being considerably greater than the sum of

the invested amounts, with interest thereon at trust company rates, or upon bond and mortgage. The leading case in this state upon the subject is *King* v. *Talbot*, 40 N. Y. 76, where the testator gave his estate to the executors, "intrusting to their discretion its investment for the benefit of my heirs." The court of appeals held that this did not in any wise enlarge the powers of the executor with reference to the investment of trust funds. In making permanent investments as trustees, executors can only loan on real estate, or on state or United States bonds. *King* v. *Talbot, supra.* The language used· by the testator, giving a discretionary power as to the kind of securities in, which investments are to be made, must be explicit and clear beyond a doubt as to the testator's intention. *Matter of Cant,* 5 Dem. Sur. 270. In this last case the will directed the executor to invest the funds "in such suitable· manner as may be for the best interests of my estate, to be determined by my said executor." Surrogate ROLLINS held that this language did not give any broader discretionary authority than was conferred by the will under consideration in *King* v. *Talbot.* In his opinion he refutes the provisions of several wills where clauses of this description have been the subject of criticism, and held upon the facts there—a loan to an individual upon his promissory note —that the investment was illegal, and not justified by the language quoted. The foregoing and many other authorities upon this subject are collected in McClel. Surr. Pr. at page 285 *et seq.* The matter should be sent back to the referee for the reason that the parties interested can claim the benefit of an appreciation where such occurs, and throw the loss on the trustees where loss has occurred. *Gillespie* v. *Brooks,* 2 Redf. Sur. 349. It appears that on October 24, 1883, the trustees bought $3,000 of Louisville & Nashville Railroad bonds with funds received from the estate of William A. Keteltas, an uncle of the *cestui que trust.* The sixth objection relates to this item, and is sound. There is no explanation, either in the account or the testimony, why this money was received by the trustees as such under the will of this decedent, or why they should account for the same herein. Certainly, upon the face· of the account, it has no connection with this trust. The finding of the referee in this regard is erroneous. In all other respects the referee's report. is confirmed.