*(Surrogate's Court, Rockland County.* December, 1890.)

1. CONSTRUCTION OF WILLS—LIFE ESTATE—POWER OF SALE.

Testator gave to his wife, during widowhood, the use of all his real and personal estate, authorizing her to sell and dispose of any of his real estate, "as to her shall seem just," and to give deeds therefor. The will further provided that, after the death of testator's wife, his property should be equally divided between his children. *Held,* that the widow was entitled only to the income of testator's property, and that the proceeds of realty sold by her under the power in the will did not vest absolutely in her, under Rev. St. (8th Ed.) p. 2446, § 81, providing that "when an absolute power of disposition, not accompanied by any trust, shall be given to the owner of a' particular estate for life or years, such estate shall be changed into a fee," and the proceeds of realty so sold passed to the children on the determination of the widow's estate. Affirmed by 15 N. Y. Supp. 586.

2. TRUSTS—INVESTMENTS—PERSONAL LIABILITY OF TRUSTEE.

A trustee is personally liable for trust funds invested in personal securities.

3. SAME—CHANGING INVESTMENTS.

Though a trustee may invest trust funds in second mortgages, he is bound to use great care in so doing; and where he allows a first mortgage belonging to the estate to be paid, and reinvests the proceeds in a second mortgage on the same property, already incumbered to nearly its full value, he is guilty of a breach of trust, and is liable for any loss thereon.

4. SAME—DEPRECIATION OF PROPERTY.

A trustee is not liable for any loss arising from the depreciation in value of property on which he has loaned part of the trust funds, when such depreciation is caused by a financial panic.

Proceeding for the judicial settlement of the accounts of Julia Mansfield and Catharine Blauvelt as executrices of the will of Isaac F. Blauvelt, deceased.

*A. & A. F. Fallon,* for executors.    *Aaron A. Demarest,* for contestants.

WEIANT, S.    The testator by his will bequeathed and devised his estate as follows, after payment of his debts: "I give unto my wife, Catharine, during her widowhood, the use of all my real and personal estate, authorizing her to sell and dispose of any of my real estate as to her shall seem just, giving and executing all deeds and writings necessary to secure the purchasers in all right of ownership, in the same manner as I could have done if living. After the death of my wife, Catharine, I order that my property be equally divided between my children, Catharine Elizabeth and Julia Frances; that is to say, I give to my executors, in trust for and during the natural life of my daughter Catharine Elizabeth, for her sole use and benefit, the income and profits of the one equal one half of all my real and personal estate, and after her death I order the said half of my estate to be equally divided among her heirs as they shall attain the age of twenty-one years each, if any shall be minors at her death.    I also give to my executors, in trust for and during the natural life of my daughter Julia Frances, for her sole benefit and use, the income and profits of the other one half of all my real and personal estate, and after her death I order the said half of my estate to be equally divided among her heirs as they shall attain the age of twenty-one years each, if any shall be minors at the time of her death.    I further direct my executors to pay the said income and profits to my daughters Catharine Elizabeth and Julia Frances in half-yearly payments, the said Catharine Elizabeth and Julia Frances giving their receipts for the same.    If either of my children Catharine Elizabeth or Julia Frances should die before their heirs shall have attained the age of twenty-one years, I order that said heirs receive their proportion of the income to which their mother was entitled, while living, in half-yearly payments."    The testator's widow and his daughter Julia Frances are the acting and accounting executrices.    The widow, under the power of sale given her in the will, has sold and conveyed certain of the real estate of the testator, and the contestants claim that the executrices must account for

the proceeds of such sales as a part of the residuary estate bequeathed and devised to the two daughters of the testator and to their respective heirs.

The widow contends that by virtue of 1 Rev. St. p. 732, (8th Ed. p. 2446,) § 81, upon the execution of such power of sale she became the absolute owner of the proceeds. That section provides that, "where an absolute power of disposition, not accompanied by any trust, shall be given to the owner of a particular estate for life or years, such estate shall be changed into a fee, absolute in respect to the rights of creditors and purchasers, but subject to any future estates limited thereon in case the power shall not be executed or the lands shall not be sold for the satisfaction of debts." I do not understand the power of sale conferred upon the widow under this will to be an absolute one, such as is contemplated by this statute. *Terry* v. *Wiggins*, 47 N. Y. 512-516. "Every power of disposition shall be deemed absolute by means of which the grantee is enabled in his lifetime to dispose of the entire fee for his own benefit." 1 Rev. St. p. 733, (8th Ed. p. 2447,) § 85. The will, when considered in all its parts, does not indicate that the power was conferred to dispose of the entire fee for the widow's own benefit. It must rather be construed as for the benefit of all, to realize a greater income, to facilitate distribution, to save partition. *Insurance Co.* v. *Shipman*, 108 N. Y. 19, 15 N. E. Rep. 58. To sell or dispose of the real estate as to her shall "seem just" must mean just to all interested in such estate. It is very clear from the whole instrument that the testator did not intend to confer such an absolute power of sale as would destroy the devises over of his estate. The provisions disposing of his property after the death of the widow are specifically set forth, and he thereby bequeaths and devises "all my real and personal estate." If the widow is given by virtue of the power an absolute title to the real estate, then the testator had no real estate to devise after his widow's death. To warrant such a construction of this devise to the widow as would nullify express subsequent provisions of his will, specific terms having that effect must appear in the instrument. The testator in exact words limited the estate of his wife to the use of all his real and personal estate during her widowhood, and to enlarge this into a fee as to the realty it must appear in clear terms where such enlargement would have the effect of nullifying devises of such realty after the death of the widow. Of course, in the consideration of the question of the effect of this power of sale conferred upon the widow, the distinction must be kept in mind as to whether the question is raised by a purchaser as to his title acquired by virtue of a sale under this power, as here, or whether it is raised by one claiming under the will an estate or interest in the proceeds. It is doubtful whether the testator intended conferring other than such power as a life tenant may exercise. Even the words "disposal absolutely" may have their absolute character qualified by restraining words connected with and limiting them to mean such absolute disposal as a tenant for life may make. *Smith* v. *Bell*, 6 Pet. 68. To the same effect, *Brant* v. *Coal Co.*, 93 U. S. 326; *Bradly* v. *Westcott*, 13 Ves. 445.

But, even if the power of sale intended to be given to the widow was to sell the realty with the full title of the testator, if she saw proper to exercise the same to enable her to realize a larger income therefrom for herself, yet it did not confer upon her an absolute title to the proceeds of the sale so as to cut off the other devisees from all interest therein. A sale under this power would not have the effect of destroying the devise to the testator's daughters and their respective heirs, as the testator had not such an intention. At most, it would cut off their interests in the particular real property sold. In other words, the purchaser from the widow might acquire a title in fee, relieved from the claim or estate of such devisees in the realty conveyed, but the proceeds would yet remain as real estate or become personalty, and to be thereafter still held by her subject to the use and disposition of the real estate according to the provisions of the will. *Leonard* v. *Society*, 35 Hun, 292-295.

Where a testator by his will gave all his real and personal estate to his wife

"for her life, she to have the same power of sale and control over said property as I could have in my own proper person," and in the following provision of his will gave to his children in equal shares "all the rest, residue, and remainder of my real or personal property in fee absolutely and forever, which shall remain after the life estate," in the preceding provision of his will given his wife, it was held by Surrogate ROLLINS in *Fernbacher* v. *Fernbacher*, 4 Dem. Sur. 227, 17 Abb. N. C. 339, that the grant to the wife of the same power of sale and control of said property as the testator himself possessed did not, in view of the other provisions of the will, enlarge to a title absolute the interest or estate expressly given to the wife for life, and the limitation over to the children was valid.   This is a well-considered case, and the judgment of the learned surrogate is predicated upon an elaborate review of the authorities.   I consider the determination of the court well founded in that case, and, as there is certainly nothing in the provisions of the will of the testator in this case more favorable to the widow, I must reach a like conclusion as that of the learned surrogate there.   Indeed, in that case all the real and personal estate was given to the widow for her life.   In this the "use" for life was bequeathed and devised.   The case of *Campbell* v. *Beaumont*, 91 N. Y. 464, is not in conflict with the construction I have adopted. There the testator left to his widow all his property, to be enjoyed by her for her sole use and benefit.   There were no limitations upon the estate given her.

Furthermore, "no expectant estate can be defeated or barred by any alienation or other act of the owner of the intermediate or precedent estate,"—1 Rev. St. p. 725, (8th Ed. p. 2434,) § 32,—"unless in some manner or by act or means which the party creating such estate shall in the creation thereof have provided for or authorized,"—Id. § 33.   I am unable to perceive how the power of sale bestowed upon the widow in this instance can be so construed as to confer upon her a power that will defeat or bar the estates given to the daughters and their respective heirs.   There is nothing in the terms of the will to so indicate, while the instrument as a whole clearly shows a contrary intention.   Such a construction would wipe out express and thoughtfully prepared provisions of the will, and it should not be adopted unless the provisions are clearly antagonistic, and cannot stand together, unless such provisions contravene some absolute rule of law.   *Campbell* v. *Beaumont, supra*.   When provisions are irreconcilably conflicting, one must give way to the other, and that next be adopted which seems to accord most nearly with the testator's primary intention or object in executing the instrument; but when, by limiting the character of the first estate, the second may also be preserved, it is clearly the duty of the court to do so.   *Wager* v. *Wager*, 96 N. Y. 164–174.

Nor is there anything in the will that gives the widow more than the "use" of the estate during her widowhood.   That is the estate given her by express words, and there is no provision giving her more.   No terms or language are found in the instrument that can, except by the most radical distortion, be construed so as to authorize a complete or partial absorption of the principal estate.   The instrument as a whole negatives such a construction, and, without the interpolation of words and the nullification of parts of the will, no such contention can prevail.   Surrogate ROLLINS so held in the *Case of Fernbacher, supra*, and there the word "use" or words of like import did not appear, as in this.   My conclusion, therefore, is that the widow takes simply a life interest, which entitles her to the use or income during that period, with power of sale of the real estate, it may be absolutely, and of changing the character of the property.   That, upon her death or the determination of her widowhood, the estate, real and personal, of the testator, passes to the daughters and their respective heirs, as provided in the will, whether said property shall then remain in its original form or shall have been changed to another, and without impairment or diminution, unless by

unavoidable loss or injury, which, in the exercise of fair judgment and ordinary care and prudence, the widow, in the enjoyment of her estate, could not prevent.

The cases cited to sustain the construction that the widow might exhaust or appropriate the body of the estate in her use of the same are instances where words were used by the testator indicating that he contemplated the exhaustion of or appropriation by the life tenant of the body of the estate. Such as in *Thomas* v. *Wolford*, 49 Hun, 145, 21 Abb. N. C. 231, where we find used the words, "should there be any left to be divided among the children or their heirs;" in *Flanagan* v. *Flanagan*, 8 Abb. N. C. 413, "the portion left of said remainder;" *Simpson* v. *French*, 6 Dem. Sur. 108, "to do with said property as he shall think best;" and "left by her," in *Re Williamson*, 1 Connoly, Sur. 139. The executrices must therefore account for all of the principal estate of the testator that has come into their custody as such, and hold the same in accordance with the provisions of the will as above construed.

Applying this construction of the will to certain acts of the executrices in the administration of the estate, it is claimed by the contestants that certain losses of the principal estate have been sustained which the executrices cannot be credited for, as sought in the accounts. My present understanding is that the contestants only insist upon the disallowance of five of these credited losses. Two notes made by M. Delos Mansfield for $600 and $1,800, respectively; a bond and mortgage on lots 3 and 4 of the Washington avenue property, made by said Mansfield to the widow Catharine Blauvelt, to secure $2,000, dated February 19, 1874; a bond and mortgage made by said Mansfield to Mrs. Blauvelt on lot 6 of the Washington avenue property to secure $2,000, dated November, 1873; and a bond and mortgage from said Mansfield to Mrs. Blauvelt on the Hillside avenue property to secure $2,000, given in 1874. It seems to be conceded from the evidence that the moneys invested upon these securities were part of the principal estate; that the debtor eventually became insolvent; and that the said amounts were entirely lost. These were trust funds, and the widow and executrices were bound to invest the same in securities regarded in law as proper investments, and to "employ such diligence and such prudence in the care and management of them as, in general, prudent men of discretion and intelligence in such matters employ in their own like affairs." *King* v. *Talbot*, 40 N. Y. 76–85. "This necessarily excludes all speculation, all investments for an uncertain and doubtful rise in the market, and, of course, everything that does not take into view the nature and object of the trust, and the consequences of a mistake in the election of the investment to be made." Id. "The preservation of the fund, and the procurement of a just income therefrom, are primary objects of the creation of the trust itself, and are to be primarily regarded." Id.

Within those rules which have been recognized repeatedly by the courts as equitable and just, the investments on the notes were improper. "Except under special circumstances, an executor has no right to risk, upon mere personal security, funds that his testator has intrusted to his management, and an investment upon such security constitutes a breach of trust for which the executor is personally chargeable." *In re Cant*, 5 Dem. Sur. 269, and cases cited; *In re Keteltas' Estate*, (Surr.) 6 N. Y. Supp. 668. No circumstances appear in the case making it an exception to this rule, and the credits for the losses on the notes must be refused.

As to the mortgages, I see no escape for the executrices for the losses in two of such investments. These executrices are people of honesty and integrity, and there is evidence of good faith in the fact that, at the time of making the investments, they believed that the funds were the absolute property of the executrix Mrs. Blauvelt, as widow; but upon the proof I am forced to the conclusion that the two losses have resulted from imprudent selection of securities or mismanagement. "Good faith and honest intentions will

not protect men in the performance of a trust when they depart from pruden-
tial rules which the experience of others in similar transactions has approved
as the only safe guides." *Bogart* v. *Van Velsor*, 4 Edw. Ch. 719. The
mortgage on the Hillside avenue property was originally $3,500, and a first
lien. This was paid in part, and canceled, to permit Mr. Mansfield, the mort-
gagor, to obtain a loan of $4,000, to be secured by a mortgage upon the same
lands, after which the $2,000 mortgage in question was taken by the ex-
ecutrices as a second lien. This may have been a great favor for Mr Mansfield,
but it was the surrender of a perfectly good security for one that was even
then reaching the full value of the property, and eventually proved worthless.
The evidence shows the value of the property to have then been only about
$6,000. There is no good reason why this change should have been made in
the proper management of the estate. It was this act that caused the loss.
It was a most imprudent thing to do, and there is evidence that indicates that
these ladies, losing sight of their duty to the estate, through kindness of heart,
sought to favor one who stood somewhat near them through his marriage,
and unfortunately they must now pay penalty for granting this favor.

As to the two mortgages on the Washington avenue property, I think that
the executrices should be held for one and credited with the other. The one
on lots 3 and 4 may perhaps be considered not an imprudent one, under all
the circumstances then existing. Prices of land in that locality were very
high, and yet careful men seemed to purchase at such prices, and believed
the values substantial. The evidence shows the two lots to have been worth
from $6,000 to $8,000, at the values then prevailing. The mortgages aggre-
gated $5,000. While it is true that the circumstance of an investment on a
second mortgage is one of importance on the question of the exercise of a
proper degree of care, yet it only calls for greater caution in making the in-
vestment. I do not understand that there is any rule of law prohibiting the
investment of trust funds on other than first mortgages. The question al-
ways is one of proper care and prudence. In *Smith* v. *Smith*, 4 Johns. Ch.
281, Chancellor KENT says, at page 284: "I have no doubt that it is a wise
and excellent general rule that a trustee loaning money must require adequate
real security or resort to the public funds. If he invest the trust moneys in
the public funds, he is not liable for the fall of the stocks, and probably the
depreciation of the real security would come within the reason of that rule."
As to these lots there seems to have been at the time of investment a margin
of from $1,000 to $2,000. A general financial panic throughout the country
followed or occurred about the same time, and a rapid depreciation of values
followed. Under such circumstances, I do not think the law holds a trustee
liable for losses occurring from such depreciation. *Denton* v. *Sanford*, 103
N. Y. 607, 9 N. E. Rep. 490. I shall therefore relieve the executrices from
the loss on this mortgage, but for the one on lot 6 they must be held respon-
sible. This lot was not worth, at the prices even then prevailing, above
$3,000 or $3,500. That being so, the two mortgages, $1,400 and $2,000,
aggregated the full value of the lot. This was not only lack of prudence, but
folly, to make a loan on a second mortgage under the circumstances. Let a
decree be presented for signature and entry adjusting and settling the ac-
counts accordingly. Costs to both parties payable out of the estate to be
taxed, and inserted in the decree.

------

*In re* KANE'S WILL.

*(Surrogate's Court, Rockland County.   March, 1890,)*

