NEW YORK COUNTY.—HON. D. G. ROLLINS, SURROGATE.—December, 1886.

MATTER OF PETRIE.

*In the matter of the estate of* ANN PETRIE, *deceased.*

Testamentary trustees, to whom their testator's will has given his residuary estate in trust, with power " to collect and receive the income thereof, to sell and dispose of the same, and to reinvest the proceeds of such sale in any manner that they shall deem best in order to realize a fair income therefrom, *without restriction as to the character or class of such investments*," are not thereby authorized to lend to each other assets of the estate, or invest them upon the hazardous security of a second mortgage.

APPLICATION for revocation of letters of surviving executor of decedent's will.

BUTLER, STILLMAN & HUBBARD, *for petitioner*.

P. Q. ECKERSON, *for executor*.

THE SURROGATE.—An application is here made for the removal of George H. Petrie from his office as surviving executor and trustee of and under the will of this testatrix, Ann Petrie, deceased.

By that will, which was admitted to probate in September, 1868, the testatrix gave her entire residuary estate to her executors, in trust, "to collect and receive the income thereof, to sell and dispose of the same, and to reinvest the proceeds of such sale in any manner that they shall deem best in order to realize a fair income therefrom, without restriction as to the character or class of such investments."

The will further directed that out of such income the executors should pay over to Ann Petrie, daughter of the testatrix, an annuity of $1,000 during her natural life, that they should make equal division of the balance of the income among the four sons of the testatrix, James, Alexander, Jonathan and George, and that, at the decease of the annuitant, they should convert the entire estate into cash and distribute the proceeds equally among the four sons above named, *if they should be then living.*

"And in case," the will proceeds to say, "any of my said sons shall die before my said daughter, leaving a child or children, or leaving no child or children but leaving a widow him surviving, then such child or children or such widow, or such person or persons as my said son so dying shall by his will and testament for that purpose name shall take the share or

portion of my estate and of the income thereof which said son would by the foregoing provisions be entitled to receive."

I am clearly of the opinion that, by the provision last above quoted, the testatrix intended that, in the event of the death of any one of her sons in the lifetime of her daughter, leaving a child or children him surviving, such child or children of such son so dying should receive the share of the estate which such son himself would have received had he lived to take it.

The provision for payment to the widow of a deceased son, or to the person or persons named in his last will, was not intended to be effectual unless such son should leave him surviving no child or children. Now, three of these six petitioners are sons and the three others are daughters of the decedent's son Alexander who died in 1872, while his sister, Ann Petrie, the annuitant, now deceased, was yet living.

I hold, therefore, that the petitioners are persons "interested in the estate" and "beneficially interested in the execution of the trust" within the meaning of those terms in §§ 2685 and 2871 of the Code of Civil Procedure, and are accordingly entitled to invoke the authority of the Surrogate for the removal of this respondent as executor and trustee.

The respondent does not deny the allegation of the petition that he and his brother Jonathan, now deceased, who was in his life time one of the executors of this estate, set apart the sum of $15,500 as a fund for producing the annuity provided by the will for their sister Ann. Nor does the answer dispute that the moneys thus set apart were borrowed by the ex-

ecutors for their personal and private use, the respondent taking to himself $7,500 of that amount and his associate $8,000. Each of them individually gave to the other as executor, by way of security for the payment of the respective loans, a mortgage upon certain real property.

The security furnished by this respondent was a second mortgage upon premises at Spuyten Duyvil, N. Y., already burdened with an incumbrance of $7,000. The value of this property on April 1st, 1869, when the second mortgage was effected, does not clearly appear. The respondent says, in his answer, that at the time he supposed that the loan was "amply secured." He does not deny the petitioner's allegation that the property is now worth no more than $12,000, and that an attempt to enforce the collection of the loan by foreclosure would result in a deficiency of $2,500 or $3,000.

The conduct of this respondent in borrowing a portion of the funds of the estate, under the circumstances above disclosed, and in lending to his co-executor another portion, constituted a serious breach of trust. While the testator clothed his executors with large discretionary powers he certainly did not authorize them to lend to each other the assets of the estate or to invest them upon the hazardous security of a second mortgage (Matter of Cant, *ante*, 269, and cases cited; King v. Talbot, 40 *N. Y.*, 76; Adair v. Brimmer, 74 *N. Y.*, 539; Lockhart v. Reilly, 1 *De G. & J.*, 464, 476; Norris v. Wright, 14 *Beav.*, 291, 307; Drosier v. Brereton, 15 *Beav.*, 226; Westover v. Chapman, 1 *Coll. C. C.*, 177; Savage v. Gould, 60 *How. Pr.*, 234;

Singleton v. Lowndes, 9 *So. Car.*, 465; Stickney v. Sewell, 1 *Myl. & Cr.*, 8; In re Walker, 5 *Russ.*, 7; Tuttle v. Gilmore, 36 *N. J. Eq.*, 617).

The mere fact that an executor, administrator or trustee has, without lawful authority, borrowed funds entrusted to his charge does not *ipso facto* call for his removal. But when his conduct has been such as to endanger the trust property, or to show a want of honesty or of proper capacity or of reasonable fidelity, he must be pronounced "unfit for the due execution of his office," and must accordingly be deprived of it (Morgan v. Morgan, 3 *Dem.*, 612; Code Civ Pro., §§ 2685, 2687, 2817).

It is urged in behalf of this respondent that he must be held harmless for making the investments here assailed because of a certain agreement entered into on April 27th, 1869, between himself, his co-executor and certain persons interested in the estate, including Alexander S. Petrie, the father of these petitioners. There is nothing in the terms of that agreement, or of the decree of April 19th, 1870, by which it is recognized, tending to show that any of the parties thereto, other than the executors, were cognizant of the fact that the loans to which it refers were loans to the executors themselves, or that one of those loans was protected by no better security than a second mortgage. And, besides, these petitioners were not parties to the agreement and are not bound by the decree. Assuming, therefore, that the executors would have been protected in case Alexander S. Petrie had outlived the annuitant, they took the risk of his failing to do so, and as in fact the annuitant was living at

Alexander's death, the surviving executor must suffer the consequences.

He is confessedly unable to make immediate restoration to the estate of the funds he has borrowed, and as payment can only be enforced by proceedings against him and his property, I direct that his letters testamentary be revoked, and that he be removed from his office as trustee under this testator's will.