In the Matter of the Accounting of Edgar F. Luckenbach, as Trustee under the Will of Lewis Luckenbach, Deceased. Phillip Barnett et al., as Assignees and Trustees of Lewis Luckenbach, Appellants; Edgar F. Luckenbach, Jr., et al., Respondents.

Second Department, May 4, 1953.

Edward W. Bourne, James D. Ewing, Francis A. McGrath, Eugene Z. Du Bose and J. Kenneth Campbell for appellants.

. Robert W. Owens, Jr. for Edgar F. Luckenbach, Jr., respondent.

Harold M. Kennedy for Roscoe H. Hupper, respondent.

Per Curiam. The facts are fairly stated in the dissenting opinion.

The weight of the evidence establishes that the trust is entitled to a share of the business rather than fractional interests in specific ships. The deceased trustee might have kept trust affairs and accounts in such shape as to justify application of the " fractional interest " theory, but the fact is that he did not do so. He kept no trust accounts after the year 1914, and thereafter commingled trust and personal assets without means of separate identification. His acts and statements, together with the testator's will and the other evidence, indicate overwhelmingly that the trust is entitled to a share in the business as such.

The evidence establishes that as of December 31, 1918, the trust was entitled to an interest of 13.608% in the business; the net worth of the enterprise being $18,327,726.84 and the trust's share therein being $2,494,082.87. The trust interest in the business was peculiar, however, in that it could not grow by any increments to income, the deceased trustee being entitled to the income as an individual. Stated another way, the interest of the trust was entitled to grow by means of every increment to the business other than increments to income. For the purposes of computation, the assets of the business, as of April 26, 1943, must be reduced by $15,896,165.80 before the interest of the trust is applied. This amount represents depreciation reserves, taken out of income which, under the terms of the will, was the property of the trustee as an individual. The trust remaindermen are entitled, at their option, to shares of stock in the corporation which holds the commingled assets, but only after such assets have been reduced, as stated above, for purposes of computation.

We are aware that such amount of stock may not provide as much to appellants as do the accounts in suit which are acquiesced in by the other two remaindermen and by the respondent fiduciary. Nevertheless, appellants at their option have the right to the stock as representing the form in which trust assets have been found.

Specific arguments on appeal are disposed of as follows: (1) The further account and supplemental account substantially comply with the decrees which ordered their filing, excepting " Statement B ", and the respondent fiduciary has established the deceased trustee's personal interest in the business; (2) appellants are entitled to receive shares of stock in lieu of cash, at their option; (3) the trust is not entitled to 58.46% of the stock; (4) the amounts in the depreciation reserve account are properly credited to the deceased trustee personally; (5) " Statement B " of the further account is largely arbitrary insofar as it purports to allocate funds to reinvestments; (6) the further account does not adequately treat capital gains and losses in respect of the trust's interests in vessels actually disposed of, but such deficiencies are more than offset by amortizations; (7) the failure to account for good will is immaterial; (8) the failure to account for subsidiaries is immaterial; (9) there has been no irretrievable election by appellants to receive cash in lieu of shares of stock, and (10) there was no acquiescence and laches by appellants' assignor which estops appellants.

The decree, insofar as appeal is taken, should be affirmed, with costs to all parties filing briefs payable out of the estate, unless within thirty days after the date hereof appellants stipulate, in writing, to return to the respondent fiduciary, within sixty days after entry of the order hereon, all moneys heretofore received on account of the trust remainder, without interest, and to accept 4.536% of the shares of stock of the Luckenbach Steamship Co., Inc., to be considered issued as of April 26, 1943, and the said stock to be applicable to the assets of the said corporation, as of April 26, 1943, after they have been considered reduced by $15,896,165.80. In the event such stipulation be filed, as aforesaid, the decree, insofar as appeal is taken, should be reversed on the law and the facts, with costs to all parties filing briefs, payable out of the estate, and the matter remitted to the Surrogate's Court to enter a decree not inconsistent herewith. In the event of such reversal, findings of fact and conclusions of law inconsistent herewith should be reversed and new findings and conclusions should be made as stated herein.

NOLAN, P. J. (dissenting in part). This is an appeal by assignees and trustees of Lewis Luckenbach, a remainderman of a trust created under the will of his grandfather, Lewis Luckenbach, deceased (hereinafter referred to as the testator) from a decree settling the accounts of Edgar F. Luckenbach, testator's son, the deceased trustee of said trust, and overruling and dismissing substantially all the objections filed by appellants to the accounts. The remaindermen under the trust are the three children of the deceased trustee: Andrea L. Hammer, who filed objections to the accounts but subsequently withdrew them; Edgar F. Luckenbach, Jr., who filed no objections; and Lewis Luckenbach, whose remainder interest was assigned to appellants, upon whose objections the trial was held before an Official Referee.

For many years prior to his death in 1906, testator was in the shipping business, with headquarters in New York. At the time of his death he owned major fractional interests in five steamers, four steam tugs and eighteen barges, the other interests being owned by his son Edgar and the estate of a deceased brother, Edward. The form in which the business was conducted was to regard each vessel as a separate enterprise, and profits and losses in respect of every vessel were divided according to the ownership shares.

Under the testator's will and codicils, all his residuary personal property was given to his widow outright, except his shipping business, which was placed in trust. As to that business, he directed that it be continued by Edgar as long as he cared to do so and while it remained profitable, and at his death the corpus was to be paid to Edgar's issue. All income from the trust was to be paid to Edgar, after a payment of $15,000 per annum to the widow, and his widow in fact received such payments until her death in 1926. Edgar and the Kings County Trust Company were designated as executors and trustees.

Edgar continued the business, and by 1908 the general estate was fully administered, the trust erected and the executors discharged. The trust company resigned as trustee; and Edgar thereafter operated the business as sole trustee and income beneficiary until his death on April 26, 1943. The parties agree that the original trust corpus, in 1908, amounted to $392,152.50, which was the value of testator's interest in the vessels to which reference has been made. In the conduct of the business, Edgar purchased new ships out of his income; trust vessels were lost or disposed of; additional vessels were acquired with the pro-

ceeds of the sales or insurance; and the extent and character of the shipping operations were greatly enlarged. For a time after testator's death, Edgar maintained books in the name of the "Estate of Lewis Luckenbach", and in addition, in 1907, he opened a set of books in his own name as an individual. The books of the estate were closed out in 1914 and the accounts transferred to his personal books; and thereafter no records were kept by him which showed the existence of any interest by the trust in anything.

Meanwhile, in 1913, Edgar had formed the Luckenbach Steamship Co., Inc., which until 1918 was merely an operating company. In 1915, he organized the Luckenbach Co., Inc., for the avowed purpose of constructing new vessels. In 1918, the Luckenbach Co., Inc., was merged into the Luckenbach Steamship Co., Inc., and everything Edgar possessed, including the vessels owned individually and those in which the trust had an interest, was transferred to the Steamship Company. Edgar received all the stock of the corporation; and from that time forth continued to hold all the stock and to operate his entire shipping business by means of the Steamship Company. (The interests of the heirs of Edward were taken care of otherwise, and that matter is of little importance on the questions here involved.) There is no entry anywhere, either in Edgar's personal records or the books of the corporation, which indicates any interest of the trust in the vessels or other assets of the company.

During the years, Edgar never voluntarily accounted as trustee, presumably because he was the sole income beneficiary (after the annual payments of $15,000 to his mother, which were made). In 1938, his daughter Andrea, then a minor, moved through a guardian to compel the trustee to account. In 1939, he filed his first account, which disclosed that the original trust vessels had all been sunk or sold, and proceeds received from insurance companies and the Government; and it was stated that the money thus received had been invested in other ships, held by the Steamship Company. An amended account, filed later in 1939, by the direction of the Surrogate, stated in effect that the trustee over the years had reinvested the trust's shares of recoveries for lost vessels in newer ships, and as a result of that process the trustee charged himself with approximately $2,229,000 in favor of the trust. Objections were filed to the amended account, principally on the ground that the theory of fractional interests in subsequently acquired ships was erroneous and that the trust was entitled to an interest in the shipping

business as a going concern. The issues were referred to a Referee who, after extensive hearings, upheld the " fractional interest " theory and rejected appellants' claim. A motion to reject the report was not decided by the Surrogate until after Edgar's death in April, 1943. He modified the report by rejecting the " fractional interest " in ships theory, and held that the business existing at the time of the trustee's death in 1943, was the same business, or the natural outgrowth thereof, as the business conducted by the testator at the time of his death in 1906, and directed the deceased trustee's executor to file a further account. That decree, as resettled, was affirmed by this court (269 App. Div. 948), as well as an order denying a motion by the general guardian of Edgar, Jr., to vacate the resettled decree (269 App. Div. 700).

Under date of April 13, 1946, Edgar's representative filed a " Further Accounting " covering the period from January 1, 1908, to December 31, 1942. It adheres to the " fractional interest " theory and credits the trust with $2,662,406.87. A supplemental account filed thereafter, for the period from December 31, 1942, to the date of the trustee's death, April 26, 1943, showed the trust's interest as of the date of death to be $2,533,845.17. Appellants objected to the accounts, mainly because they adhered to the " fractional interest " in specific ships theory. The matter was referred to an Official Referee to hear and determine, who, after extensive hearings, accepted the " fractional interest " theory, made a slight increase in the accountant's figures on his consent, and found the corpus of the trust to be $2,820,131.06. His report was confirmed by the Surrogate, *pro forma*, and the appeal is from the decree entered thereon.

It is appellants' contention, in substance, that the court below erred in accepting the " fractional interest " theory followed in the accounts; that they are entitled to shares of stock in the Luckenbach Steamship Co., Inc., as representing the steamship business left in trust by the testator; and that the amount of stock to which they are entitled is 58.46% of the whole, which is the alleged proportion that the assets contributed by the trust to the Steamship Company in 1918 bore to the total investment therein. The members of this court are all agreed that the trust is entitled to stock in the Steamship Company based upon the relation of the value of the trust property to the total assets contributed to the company in 1918. It was the position of Edgar's representative that the investment of the trust assets in stock of the Steamship Company would have been unauthorized, and the learned Referee has so found. That question need

not be decided. The evidence conclusively establishes that the trustee did invest the trust assets in corporate stock, and did not in fact reinvest such assets in new and different vessels as stated in the further account; and there appears to be no reason why appellants may not ratify the trustee's act, even though it may have been unauthorized. If it be assumed that the trustee had no right to invest the trust assets in stock the beneficiaries of the trust have, nevertheless, the option of accepting or rejecting the improper investment. (*King* v. *Talbot,* 40 N. Y. 76; *Matter of Pelton,* 264 App. Div. 176; *Matter of Kirby,* 280 App. Div. 381.) Appellants have taken the position throughout this proceeding and on this appeal that their option is to be exercised by accepting the investment. Appellants have, however, received from the trust estate $850,000 on account of their claims, without prejudice to their contention that they are entitled to corporate stock. We are all agreed that if they are to accept the stock they must promptly repay to the trust the money which they have received.

We are agreed, also, that appellants' claim that the trust assets constituted 58.46% of the total property contributed in 1918 is not supported by the proof; and that the correct figure is 13.608%. The interest of the trust estate in the vessels and uninvested funds transferred at that time, as found by the Official Referee, was $2,441,608.52. In arriving at that figure, however, he failed to credit the trust with its share of $157,724.19, to which he found the trust was entitled on account of losses on vessels or vessels lost without proceeds, and not charged against depreciation or a self-insurance fund. Of that amount, $52,474.35 was chargeable to losses sustained prior to 1918; and if that sum is added to the amount found by the Referee, it appears that the value of the trust interest transferred to the Steamship Company in 1918 was $2,494,082.87. The total assets transferred, as found on sufficient evidence, were $18,327,726.84; so that the trust property constituted 13.608% of that amount.

We differ, however, with the majority's treatment of the sum of $15,896,165.80 carried on the books of the Steamship Company as a reserve for depreciation. It is the view of the majority, as it was of the learned Referee, that since this fund was set aside from income, and since the deceased trustee was entitled to all of the income of the trust, during his lifetime, his representative should now be paid, before the delivery of any stock to appellants, the full amount of the depreciation reserve. With this view we are unable to agree. A considerable portion of the briefs submitted has been devoted to a discussion of con-

tentions by appellants that Edgar was required, in the conduct of the Steamship Company's business, to make provision for depreciation of the floating equipment and other property of the company, for the benefit of the remaindermen, and that the income to which Edgar was entitled could only be computed after making a deduction from gross income for that purpose. We find it unnecessary to decide the questions thus presented.

Edgar, as the nominal owner of all the stock, controlled the business and financial policies of the company, and in determining what those policies should be, was charged with the duty of acting with due regard for the interests of the trust remaindermen, as well as for his own. (Cf. *Matter of Hubbell,* 302 N. Y. 246.) The record establishes that it was determined as a matter of corporate management during Edgar's lifetime and presumably under his direction that $15,896,165.80 of the corporate earnings should not be considered as distributable income, and should be retained as a capital asset in anticipation of the deterioration of the vessels and other property of the company. Since that determination was made or approved by Edgar himself, who as the sole income beneficiary was alone adversely affected by it, we see no reason why it should now be set aside even if it be assumed that a different policy might have been adopted, if Edgar had so desired. Moreover, although Edgar was entitled to all of the income of the trust during his lifetime, he was not, after converting his personal holdings and the assets of the trust into corporate stock, necessarily entitled to all the earnings of the corporation. After 1918, his own holdings and those of the trust consisted of corporate stock, and there could be no income thereon except as dividends might be declared by the corporation. Since Edgar was in complete control of the corporation, his withdrawals from the corporate earnings, during his lifetime, may be regarded as equivalent to the declaration of dividends. Except insofar as corporate funds were thus withdrawn, or dividends were declared, however, the earnings of the corporation did not constitute personal or trust income, and were subject to disposition as the directors might decide, in the proper business management of the company. Consequently, it is our opinion that the depreciation reserve should not be paid over to Edgar's representative, and that if appellants shall elect to repay the money which they have received, and to accept stock in the corporation as their interest in the corpus of the trust, the decree should be reversed and the matter remitted to the Surrogate for the entry of a decree which will provide for the accounting, by the respondent executor, to

appellants, for their proportionate share in 13.608% of the stock of the Luckenbach Steamship Company as of April 26, 1943, and that if appellants shall not so elect, the decree should be affirmed.

ADEL, MACCRATE and BELDOCK, JJ., concur in *Per Curiam* opinion; NOLAN, P. J., dissents in part in an opinion, in which WENZEL, J., concurs.

The decree, insofar as appeal is taken, is affirmed, with costs to all parties filing briefs, payable out of the estate, unless within thirty days after the date hereof appellants stipulate, in writing, to return to the respondent fiduciary, within sixty days after entry of the order hereon, all moneys heretofore received on account of the trust remainder, without interest, and to accept 4.536% of the shares of stock of the Luckenbach Steamship Co., Inc., to be considered issued as of April 26, 1943, and the said stock to be applicable to the assets of the said corporation, as of April 26, 1943, after they have been considered reduced by $15,896,165.80. In the event such stipulation be filed, as aforesaid, the decree, insofar as appeal is taken, is reversed on the law and the facts, with costs to all parties filing briefs, payable out of the estate, and the matter remitted to the Surrogate's Court to enter a decree not inconsistent herewith. In the event of such reversal, findings of fact and conclusions of law inconsistent herewith are reversed and new findings and conclusions are made as stated herein. [See 282 App. Div. 763.]